## GLASPELL v. DAVIS et al.

### Civ. No. 801.

District Court, D. Oregon.

Feb. 2, 1942.

302

Frank C. McColloch and Alfred H. Corbett (of Dey, Hampson & Nelson), all of Portland, Or., for plaintiff.

Arvin O. Robb, of Baker, Or., for defendants Davis and Thomas.

Leon W. Behrman, of Portland, Or., for defendant George H. Gage.

M. B. Meacham and E. Earl Feike, both of Portland, Or., for defendant Lois M. Gage.

JAMES ALGER FEE, District Judge.

This action is for rent of personal property, damages to personal property and conversion of personal property.

A pre-trial order was entered in this case which lay the basis for the trial of certain questions of fact related to the jurisdiction of the court in the proceeding.

The questions so set out are:

1. Was plaintiff a citizen of California or Oregon at the date the complaint was filed?

(a) When plaintiff registered and voted in Oregon, did she intend to return to California to reside there permanently?

(b) Did the act of registration and voting in Oregon as a matter of law, and regardless of her intent, deprive her of her California citizenship and make her a citizen of Oregon?

(c) If her California citizenship was lost as a matter of law by such registering and voting, was it restored to her prior to the filing of the complaint?

2. Did the plaintiff pay value for the assignment expressed in Pre-trial Exhibit No. 1?

3. May the defendants, for the purpose of testing jurisdiction, inquire as to the consideration underlying such assignment which it is admitted is valid on its face?

The agreed facts in the order are:

"I. Gladys N. Glaspell, the plaintiff is, and for more than twenty years prior hereto was the wife of C. Foster Glaspell. They now live together as husband and wife, and during all times mentioned herein have lived together as such.

"II. For more than twenty years prior to the happening of the events enumerated in paragraph IV hereof, plaintiff and her husband maintained a home continuously in the Cities of Pasadena and Los Angeles, California, and for a period of more than five years prior to the happening of said events, such home and dwelling was situate at one location, namely: 5233 Montavista Avenue, Highland Park, Los Angeles, in said State of California. Plaintiff voted regularly during said period at elections held in California, paid taxes in California, and continuously resided in said state as aforesaid. They resided in California during said period of time with the intent of remaining there permanently. Defendants do not question that until the happening of the events enumerated in paragraph IV hereof plaintiff was a citizen of California.

"III. In the year 1937, plaintiff, her said husband, and others, acquired ownership of certain mining claims and properties on Burnt River in Baker County, Oregon. They organized an Oregon corporation called Buttercup Mines, Inc., for the purpose of acquiring title to said mining claims, purchasing machinery and equipment and conducting mining operations thereon. For over twenty years last past, neither plaintiff nor her said husband have had any other property or business connections in Oregon. Said corporation was organized by Articles dated August 12, 1937. These Articles were signed and verified by the plaintiff in Los Angeles, California, on the 14th day of August, 1937. The corporation conducted mining operations on the claims above mentioned in the mining seasons of 1937 and 1938. Plaintiff's husband has been a Director

and President and General Manager of the corporation since its organization. Plaintiff has been a Director and Secretary-Treasurer since about August, 1938.

"IV. On the —— day of October, 1940, plaintiff having been in Oregon on the business of said corporation for more than six months, duly registered according to the laws of Oregon with the County Clerk of Baker County, Oregon, as a voter. She voted at the general election held in Baker County, Oregon, on November 5, 1940. At all times when plaintiff was in Oregon she lived either in a house belonging to said corporation situated on its mining claims or in hotels.

"V. On the 15th day of December, 1940, plaintiff returned to the State of California to the dwelling house at 5233 Montavista Avenue, Los Angeles, above mentioned, and remained there continuously until the 5th day of April, 1941.

"VI. On the 5th day of April, 1941, plaintiff returned to Oregon and remained in Oregon until September 5, 1941. During said time she stayed in the house on the said mining claims or in hotels. At all other times during the year 1941 up to the present time, she has resided in a dwelling house or dwelling houses maintained by her said husband and herself in Los Angeles in the State of California. The purpose of her stay in Oregon in the year 1941, as aforesaid, was solely connected with the affairs of said mining corporation, and particularly with the instant litigation.

"VII. The Complaint herein was filed on July 24, 1941, and on said day and prior thereto plaintiff had not re-registered as a voter in the State of California. Nor has plaintiff re-registered as such voter since said Complaint was filed. No elections have been held in California since November 5, 1940.

"VIII. On July 25, 1940 the lease mentioned in the Complaint herein was executed. On September 9, 1940, at a time when there was no controversy between Buttercup Mines, Inc., and the defendants, or any of them, over said lease, and no litigation was in contemplation between them, certain action was taken by the directors of the corporation respecting assignment of said lease and leased property to plaintiff. A true copy of the original minutes of the meeting of said Directors is marked 'Pre-trial Exhibit 1' and attached hereto. Further action was taken by the stockholders and directors at subsequent meetings on May 5, 1941, true copies of the original minutes being attached hereto and marked 'Pre-trial Exhibit 2' and 'Pre-trial Exhibit 3' respectively. The defendants admit that this corporate action was prima facie valid but do not admit that it was for value. On October 1, 1938, on June 5, 1939, and on April 2, 1940, said corporation made, executed, and delivered to plaintiff its promissory notes in the amount of $900.00, $1,400.00, and $1,200.00 respectively, which notes had not been surrendered or cancelled on the 10th day of September, 1940. Said notes are in evidence herein marked Pretrial Exhibits 4, 5 and 6 respectively. On September 10, 1940, after the adoption of the resolution disclosed in pre-trial exhibit No. 1, plaintiff cancelled and surrendered said promissory notes to said corporation.

"IX. This action is for rent of personal property, damages to personal property, and conversion of personal property. The Complaint alleges rent is due from defendants at the rate of $500.00 per month from July 25, 1940 until May 21, 1941; that damages are due for conversion in the sums of $2,157.50 and $47.00 respectively, and for injury to property in the amount of $582.00.

"X. The defendants are citizens of Oregon."

The question of procedure arises at the threshold. The complaint sets up diversity of citizenship and a proper jurisdictional amount and a plain concise statement of the claims in two counts. Defendant George H. Gage answered (1) that plaintiff is a citizen of California, (2) that the assignment to plaintiff was not bona fide but was made for the sole purpose of obtaining jurisdiction in the federal court, (3) a general denial. Lois M. Gage filed an answer which amounts to a general denial of the complaint. Joe J. Davis and Clarence Thomas set up, with minor exceptions, a general denial coupled with an affirmative defense that there was a lease between plaintiff and defendants on July 25, 1940, but that it had been mutually cancelled and held for naught on October 19, 1940.

The issues were thus complete. A pre-trial conference was held. It clearly developed there that the issues of fact relating to jurisdiction were sharply contested. The court directed the drafting

of a pre-trial order in which the facts undisputed as to these issues should be set out and the questions relating to jurisdiction should be defined.

■■ Rule 16 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, might be taken to indicate that there should be only one pre-trial order in a case. However, the entire purpose of the rules was to strike from judges and litigants useless shackles of procedure to the end that a fair trial of the essential questions could be had. The trial court is vested with broad discretionary powers so long as its action is not inconsistent with substantial justice. Rule 61. The court has the power "in furtherance of convenience" to "order a separate trial" "of any separate issue". Rule 42(b). Inasmuch as the purpose of the pre-trial order is the simplification of the issues, it constitutes the most expeditious manner consistent with the rules, whereby the admitted facts and the disputed facts relating to jurisdiction could be set down. The power to draft a further pre-trial order shaping the other issues, if need be, is reserved by this order. The vital issue of jurisdiction can thus be settled prior to trial of the other issues and may, perhaps, lay the basis for a judgment of dismissal. The essentials of issue are preserved by clear statement of disputed facts. Answers to the questions thus formulated will give definite foundation for judgment on these issues. On appeal, the appellate court can determine at a glance what the trial court determined. This procedure is therefore approved.

Upon the trial evidence was introduced by both sides and the court now can set forth the determination of the issues.

■■ Plaintiff testified but most facts have been agreed upon. The court finds her intention was to remain a citizen of California. Her husband resided there. There was her home. While she was in Oregon her invalid daughter and her minor son were there. The only matter upon which defendants seriously rely is the fact that she cast a vote in Oregon. Her explanation that she was persuaded to do this by a deputy county clerk does not do credit to her education and training. At any rate, it cannot be conclusive of her intention. There could be no "floater" from another state convicted of a crime, if the mere act of voting conclusively established his residence. The expression in Shelton v. Tiffin, 47 U.S. 163, 185, 6 How. 163, 12 L.Ed. 387, must be subject to some exceptions. The court holds that in this case the presumption was rebuttable and rebutted.

In any event, even if the residence in Oregon were thus established, the return of plaintiff to her California home and remaining there for about four months indicates that she then intended to remain. It may well be if the business affairs in Oregon had gone completely to plaintiff's satisfaction, she would not have returned to Oregon even then. The court determines that whatever may have been the situation before that, plaintiff was intending to claim California as her home from December 16, 1940, and physically returned there for that purpose.

The remaining question can be shortly answered. Mrs. Glaspell had three notes given her, respectively, October 1, 1938, for $900, June 5, 1939, for $1,400 and April 2, 1940, for $1,200. These notes were in payment of advances made by her. On September 10, 1940, the corporation transferred the personal property to her and she cancelled the notes. There was at that time no suggestion of trouble between the parties to this litigation. The transfer was for a valid consideration and not for the purpose of allowing this court to take jurisdiction.

The court holds it has jurisdiction. The parties are directed to be present at a time to be later set for a further pre-trial conference in order to draw an order which will simplify the remaining issues.