**UNITED PRESS ASSOCIATIONS, a Corporation, Appellant,**

**v.**

**Sidney Dean CHARLES, Paul S. Charles and Patricia Charles and the Pioneer Printing Company, a Corporation, Appellees.**

**No. 14863.**

United States Court of Appeals Ninth Circuit.

March 1, 1957.

Writ of Certiorari Denied June 17, 1957. See 77 S.Ct. 1378.

John H. Dimond, Juneau, Alaska, and Baker, Hostetler, Patterson & Wick, Cleveland, Ohio, for appellant.

Faulkner, Banfield & Boochever, Juneau, Alaska, and Herbert C. Faulkner, San Francisco, Cal., for appellee.

Before HEALY, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This case balances upon the single question of whether a civil case involving over twenty dollars, which has been fairly and impartially tried by the court sitting with a jury, should be reversed because of a procedural technicality claimed to vitiate the order of the court calling a jury.

United Press [1] brought action for damages, setting up alleged breach of contract and loss of profit over the time the contract, according to its terms, had yet to run. Charles [2] answered alleging cancellation for breach by United Press. A counterclaim was also set up in the answer. The reply admitted this amount was due to Charles.

The jury trial was held under the circumstances hereinbelow outlined. Neither Charles nor United Press asked for a jury within ten days after the issues were made up.[3] Thereafter, Charles filed a motion for jury trial. The court denied this motion on September 24, 1954. On April 12, 1955, the court entered an order directing a jury trial sua sponte. United Press objected, but went to trial. The jury found a verdict for United Press with damages at $368.70 and a verdict for Charles on the admitted counterclaim for $368.70. Judgment was entered on these general verdicts.

It is now and has always been agreed by all members of this panel that this judgment must be affirmed if there were no defect in placing the cause on trial by a jury.

Appellant takes the position that the case must be reversed because there was a jury trial, instead of a trial by the judge alone.

There is no express prohibition of jury trial in the Constitution, treaties or laws of the United States. There is no express denial of the right of a trial judge to call a jury in any civil trial in the Federal Rules of Civil Procedure. The emphasis in Rules 38 and 39 is upon procedure whereby a "party" may be deprived of his right to jury trial guaranteed by the Seventh Amendment to the Constitution. At common law, prior to the adoption of the Federal Constitution, trial by jury in a case for breach of contract would have been the usual and normal, if not the inevitable, course.

Appellant now insists that these Rules gave him an absolute right to trial by the judge sitting without a jury. Trial by jury therefore was irremedial error. Therefore, the case must be reversed on this ground alone. So the argument runs. Appellant arrives at this result by a highly technical construction of the text of the pertinent Rules. But it would seem that this is rationalization flatly contradicted by the positive declaration of intent contained in the first of these Rules that the "right of trial by jury as declared by the Seventh Amendment to the Constitution * * * shall be preserved to the parties inviolate." Had the Rules contained any express prohibition of jury trial under any set of circumstances, it is probable that the Supreme Court of the United States would not have adopted such provisions, and it is equally probable that Congress would not have approved them.[4]

---

1. "United Press" is used in this opinion to designate the plaintiff-appellant.

2. "Charles" is used to include all defendants and appellees.

3. Failure so to demand is described as a

waiver of that right by each of the *parties.* Rule 38(d), Federal Rules of Civil Procedure, 28 U.S.C.A.

4. The tendency of commentators to limit the use of trial by jury was noted when

The position of appellant in this case is untenable.[5] The gist of its theory is that by a technical slip Charles, as a party, had waived a valuable constitutional right. This right was not revived when Charles, as a party, filed a motion for jury trial in accordance with the Rules, because the court denied it. Thereafter, it is said not even the court could restore to Charles his right to jury trial, even though the motion by Charles was never withdrawn.[6]

If waiver is thus so potent, it may be applied also to United Press. United Press chose to do business in Alaska. When it filed complaint in the local federal court as plaintiff,[7] it contemplated

the acceptance of the judgment of the local community as expressed by a jury drawn from the vicinage. By a procedural situation, it was tentatively relieved of that necessity. But the trial judge entered an order for jury trial. Appellant objected. The point that was really made in the objection by United Press was not that it resisted jury trial, but that witnesses should have been called in that instance instead of depositions of certain witnesses which it presented. However, it was at the same time opposing delay because it had brought two witnesses from outside. The gravamen of its complaint was that the order was changed on the eve of

the preliminary draft of the Federal Rules was put out, but the matter was not drawn to the attention of Congress. See comment, 16 Ore.L.Rev. 103, 115, where it is said:

"Finally, although the rules as proposed in words protect the right of jury trial, it is clear that when no theory lies at the basis of a pleading that 'right' is lost. This also is by design and not by inadvertence. The committee cite and give their approval to an article by James Fleming Jr., entitled *Trial by Jury and the New Federal Rules of Procedure.* There the underlying attitude is set forth as follows:

" 'The right of jury trial should not be expanded. This method of settling disputes is expensive and dilatory—perhaps anachronistic. Indeed the number of jury trials should be cut down if this can be done so as not to jeopardize the attainment of the other objectives . . . Some of these objectives have been widely accomplished under various systems uniting law and equity. Almost everywhere, for instance, a plaintiff may claim both legal and equitable relief arising from a single cause of action . . . One of the greatest difficulties seems to be associated with what may be termed a "theory of the pleadings" doctrine.'

"It may be objected that it is unfair to accuse the author of attempting to abolish jury trial, since the article purports to have 'strict regard for the constitutional limitation'; but the passage does reflect the underlying distrust of theorists for jury trial and indicates the desire to render the constitutional right as narrow as possible. It also shows the close connection between the elimination from the rules of the phrase 'cause of action', with

the included idea of a basic theory of relief, and the objective of limiting the right of jury trial. The 'waiver clause' of the rules is of vast assistance also under such circumstances."

5. In 3A, Ohlinger's Fed.Prac. (1948 Ed.) page 25, the view is taken that the court has a right to grant jury trial notwithstanding waiver by the parties. It is said, " * * * but it may well be questioned that such a limitation is intended or, if intended, that such a limitation would be valid." In the pocket part to the 1956 edition, this view is repeated, citing Pallant v. Sinatra, D.C., 7 F.R.D. 293, which is explained infra Note 11.

6. In Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225, the cause was actually decided upon the clear consent, acquiescence and waiver of the parties, which is the ground here. The able writer of the opinion, Circuit Judge Murrah, simply used the language of the Rules to fortify his conclusion that the *party* had, by going to trial, given up any right to insist that the trial judge could not make findings on the evidence which he had heard. This right has always existed where an advisory jury is called, whether at law or in equity. The case is not applicable here. First, because the trial judge in the Hargrove case did not attempt to call a regular jury either on his own motion or on motion of a party. Second, Judge Folta did not attempt to call an advisory jury, but insisted that he empaneled a regular jury as at common law.

7. The action was commenced in Juneau, but later transferred for trial to Ketchikan.

trial. However, it made no showing as to hardship by affidavit or sworn testimony before the court. The judge might have postponed the case, transferred it to another court or taken some other action if this had been done. Indeed, it is possible he might have called another judge to take his place. However, we see nothing in the circumstances which suggests any possible disqualification. And it must be remembered that a substitute judge might, as a very practical matter, be difficult to obtain in Alaska. But it is apparent United Press did not desire delay either. In any event, appellant went to trial before a jury and did not stand on the objections.

■ United Press was plaintiff. It was under duty to refuse to go to trial before a jury, if it intended to rely upon this procedural objection. If then the judge had dismissed its action for failure to prosecute, the existence of a personal right not to go to trial before a jury could have been tested.[8] United Press has now gambled on a jury trial and lost. By its conduct, any right it had was waived. By its conduct and acquiescence, United Press also brought to bear the one constitutional clause which has any direct bearing on this situation. In actions at law involving more than twenty dollars, the Federal Constitution provides:

"No fact tried by jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." Seventh Amendment.

We think this mandate binding upon us. The case was tried before a jury. The verdicts and the judgment founded thereon are finalities.

■ If the personal right to trial by judge alone, claimed here, was procedural, United Press could waive it. As we have seen, United Press did waive it. Appellant, as it needs must, then argues that it could not waive the point, because the trial judge had no power to grant trial by jury. This proposition is amusing and certainly paradoxical. The drafters of the Rules announce that the right of a party to jury trial shall be preserved inviolate. But the Rules provide he can waive such right. United Press claims that these provisions have metamorphosed the right of a party to have a trial by jury, which can be waived, into a right of the opposite party to trial by the judge alone, which cannot be waived. Such abracadabra is not only impotent, but utterly unconvincing.

■ The only explanation for such a result would be that the judge had no jurisdiction to order jury trial. The complete refutation of this sophistry is that there is no provision anywhere expressly forbidding the judge to call a jury, according to common law usage, as we have seen. Specifically, the entire emphasis of the Federal Rules of Civil Procedure is upon nonaction by the parties.

In any event, by definition of the Rule, the judge had power to grant trial by jury when Charles made a motion therefor. It can hardly be contended the judge lost jurisdiction when the motion by Charles for jury trial was denied. Although the latter was not insisting upon jury trial, he never withdrew the motion. The denial did not change the record. The denial was not unchangeable as a decree of Rhadamanthus. The judge could have set aside the denial and granted a jury on the eve of trial. But, it is objected, he did not so set aside the denial, but granted jury trial sua sponte. If the judge had jurisdiction to set aside the order, he had jurisdiction to grant trial by jury.

It is necessarily now claimed that a procedural trap had been perfected, from which the judge could not escape even in the interests of justice unless he followed a magical formula without verbal or clerical deviation. Ali Baba, in the case of the Forty Thieves, escaped like frus-

8. See Rule 41(b), Federal Rules of Civil Procedure. Such a dismissal is appeal-able. Boling v. United States, 9 Cir., 231 F.2d 926.

tration by remembering, even in his haste, to repeat the exact incantation of "Open Sesame." But he would have been caught in a similar procedural device if he had exclaimed "Open Rice" or "Open Barley." It is difficult to believe that the advocates of the liberal procedure, which was supposed to free courts and litigants from antique shackles of formalism, could agree to a reversal for such a procedural deviation. This action, before the beginning of the trial, had less effect on the merits than the framing of issue based upon a casual clause of the surrebutter. Medieval scholasticism could furnish no more pedantic example of the disregard of actuality in pursuit of logic.

■ The setting aside of this verdict for purely procedural defect would be an archaism as flagrant as that of Baron Surrebutter. The very purpose of the Federal Rules of Civil Procedure was to eliminate complaints as to "the technicalities of the law, the subtleties of practice and the involvements of procedure."

"The entire purpose of the rules was to strike from judges and litigants useless shackles of procedure to the end that a fair trial of the essential questions could be had. The trial court is vested with broad discretionary powers so long as its action is not inconsistent with substantial justice." Glaspell v. Davis, D.C., 2 F.R.D. 301, 304.

"It is quite noticeable in the new rules that there has been a distinct effort to enlarge the discretionary power of district judges." 45 W.Va. Q. 5.

In any event, even if the District Judge were in error, or even flagrant error, still this Court must apply the statutory rule:

"Harmless Error. On the hearing of any appeal * * * in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C.A. § 2111. See also Rules of Federal Procedure, Rule 61.

Only if the judge lacked jurisdiction, so that his action became void, would this statute be inapplicable. Therefore, appellant must revert to the contention that the judge had no jurisdiction to grant jury trial of his own motion. Only thus would the waiver of United Press be ineffective. Only thus could the procedural defect be deemed to affect the substantial rights of the parties in the mode of trial.

■ But it was not the purpose of the Supreme Court of the United States, in adopting the Federal Rules of Civil Procedure, to establish jurisdictional limitations on the power of the District Courts. In the statute relating to adoption of civil rules, it is expressly provided that:

"Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution." 28 U.S.C.A. § 2072.

It is further said in an opinion:

"There are other limitations upon the authority to prescribe rules which might have been, but were not mentioned in the Act; for instance, the inability of the court by rule to extend or restrict the jurisdiction conferred by a statute." Sibbach v. Wilson and Co., Inc., 312 U.S. 1, 10, 61 S.Ct. 422, 425, 85 L. Ed. 479.[9]

The question of the constitutionality of an absolute bar by rule to jurisdiction of the District Court in its discretion to grant a jury trial in the designated cases, despite a technical waiver by either or both parties, need not be debated here. Notwithstanding some sporadic expressions of commentators,[10] the unquestion-

---

9. See also the limitation of the powers to make rules contained in the Act of June 19, 1934, ch. 651, § 2, 48 Stat. 1064, which should not be done away with by rationalized construction.

10. No consideration is given by such com-

ed custom of the trial courts has been to grant a regular trial where the situation has demanded it, even where there has been a waiver by the parties.[11] In criminal cases, the necessity of allowing a defendant a jury even after a plea of guilty or agreement to submit to trial by judge alone is so obvious that further comment is unnecessary. The identical public policy often compels the granting of a jury trial in a law case in the face of waiver by the particular parties. There are certain controversies which split a

local community to the center. In such a case, the judgment of no court or series of courts will allay the passions or give semblance of impartiality or be accepted as a possible solution, unless founded upon a verdict of a jury of the vicinage.[12] In civil actions between labor groups in many jurisdictions, it may be imperative to call a regular or advisory jury as a matter of public policy, even though neither of the parties desires the action. Many similar situations might be suggested.[13]

mentators or courts which have dicta upon the matter to the express declaration that the right to jury trial shall be preserved inviolate, which should at least be given the authority of a declaration of intent in the preamble of a statute. No notice is taken of the fact that the limitation in both Rules applies expressly to *parties* only. If the *party* waive, the case shall be tried to the court in normal course. But, if the judge find conditions imperative, he may order trial by jury. No commentator mentions that there is no express limitation upon the power of the court. None should be implied.

11. A trial judge may adroitly protect himself from a technical construction of the rule as to *parties* by suggesting or requiring a motion for jury trial to be filed, as was done by Judge Rodney in Container Co. v. Carpenter Container Corp., D.C., 9 F.R.D. 89. Judge Folta probably could have protected himself from this technical claim if he had taken similar action here. Similarly, an excellent trial judge, after suggesting the factors which made jury trial almost imperative in the case, directed plaintiffs to file motions therefor. Pallant v. Sinatra, D.C., 7 F.R.D. 293, Judge Leibell. The lip service to the technical wording of the rule as to *parties* was not allowed in either case to prevent a jury trial where the situation demanded it. We hold the trial judge had the power on his own initiative.

12. "The service of juries is specially emphasized, because for three or four decades advocates of the abolition of the trial jury have appeared in the schools and the Press insisting that the institution is 'outmoded' and causes a 'lag' in the administration of justice, to borrow the words of those jargonists. But it is now clear that the jury never met the needs of the social order better than it can meet them today. The jury is still 'the country', the field of last resort. * * * This right to put the decision to the coun-

try, to the Ultimate Power, the people, must never be parted with." Norton, Undermining the Constitution (1950), page 37.

"The jury system tends to make the law intelligible. It tends to keep it in touch with the common facts of life. * * *

"The litigant gets a body of persons who bring to bear upon the facts of his case average common sense. * * *

"Their findings create no precedent. They can decide hard cases equitably without making bad law. Litigants are contented with the quality of justice dispensed by the courts; and this is no small gain to a legal system." Holdsworth, History of English Law (1908 Ed.), page 167.

13. It is said this country should follow the English example and practically eliminate jury trials. It is our thesis that the jury is an instrument of democratic government and must be maintained at all costs. Here the ordinary person has a right to vote for President. He should be allowed and required to express community feeling by deciding disputes between private litigants. The English have abolished the grand jury, which we consider one of the pillars of our system. See Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397. Judges in America may amuse themselves with the idea that they are sacrosanct, but they need only to read the recent article by Alexander Holtzoff (A Visit to the London Courts: The Administration of Justice in England, 42 A.B.A. Journal 29) to disabuse themselves of the idea. The English and American Systems, although each has the same foundation, have under varying conditions of fact and temper of the people grown into entirely different structures. The American depends for its existence on the jury system. Abuses should cause rectification, but abolition amounts to destruction of freedom of the individual.

Such a situation was apparent here. We have no reason to question the wisdom of Judge Folta or to attempt to defend his action. It must be noted that Judge Folta did not say he was prejudiced or indicate he thought he was disqualified. If that had been true, he must have recused himself. Rather, he simply recited that circumstances had arisen of such nature that, in the public interest, the facts should be settled by a jury. In our opinion, sound public relations often call for the arbitrament of a private dispute by a community through its representatives sitting as a jury.[14]

■■ It must be remembered that the trial judge could not foresee the result when he granted jury trial. Certainly, Charles could not foresee that the verdict would be in his favor, since he was apparently lukewarm on the subject. And, save for claiming that witnesses would be better than their depositions, United Press at no time urged that trial by jury would be prejudicial to its interest until the verdicts had been rendered. United Press should have refused to go to trial. But it took a chance, as we have seen. In any event, the matter of jury trial must be considered as of the opening of the trial and not in the light of the outcome.

Charles entered into a written contract with United Press, whereby the latter was to furnish a regular news report for use in the newspaper which Charles was publishing at Ketchikan, Alaska. The contract was in effect until February 14, 1954, when, after many complaints regarding neglect or refusal of United Press and a claim that Charles was at considerable additional expense in order to compete with a rival newspaper because of lack of news, which Charles claimed United Press was bound to furnish under the contract, Charles refused to pay for further service. Charles contends that he was compelled to accept a service from the Associated Press in order to stay in business.

There are three other assignments of error noted.

■■ First, consideration should be given to rulings of law excepted to at the trial. Objection was taken to two instructions given by the court. The first is complained of because the duration of the contract was limited to September 27, 1957, instead of extending to September 27, 1962, as claimed by United Press. After carefully considering the modification of the contract, we are of opinion that the trial court was correct in the limitation placed upon the term of the contract. Second, the trial court charged that the jury could take into consideration the probability or improbability that Charles might remain in business. While this phrase was not accurate, the record shows clearly that no exception was taken to this portion of the instruction. Neither of such matters could, in

14. "Judges must explain the law to the jury. They must separate the rule of law from the question of fact. This produces both precision in the statement of the rule and a clear outside judgment on the facts. * * * The jury is to the inside technical world of our common law system a representative of that outside sense.

"Among the results of the jury system, which we may class as political, we must place its results on the judge and on the jury itself.

"'It were the most unhappy case,' says Hale,* 'that could be to the judge if he at his peril must take upon him the guilt or innocence of the prisoner.' As the director and advisor of the jury he can take a more truly judicial attitude. If he preserves this attitude no odium attached to him, whatever be the verdict. * * *

"The jury itself is educated by the part which it is required to take in the administration of justice. This De Tocqueville regarded as the chief value of the jury. It teaches a judicial attitude. It inspires respect for law and order. It makes persons feel that they have duties to society and a share in the government." 1 Holdsworth, History of English Law (1908 Ed.), pages 168–169.

"* 2 P.C. 313 So Stephen H.C.L. i. 573, 'It saves judges from the responsibility—which to many men would appear intolerably heavy and painful—of deciding simply on their own opinions upon the guilt or innocence of the prisoner."

any event, have influenced the verdict. Third, it is said there is no basis in the record for the verdicts.

This last assignment is based upon the fact that the jury returned a verdict for United Press in the sum of $368.70 and for Charles in the sum of $368.70. This probably resulted from the fact that the judge charged the jury that, since the amount due Charles on the counterclaim was admitted, they should deduct the latter sum from any amount which they should find in favor of United Press. This we conceive was highly favorable to appellant, since the instruction inadvertently directed the jury to find some amount for United Press. But, even if we believed, as is contended, that this was only the jury's approximation of rough justice between the parties, there was no legal error. There is no ground for setting aside the verdicts for anything which happened at the trial.

A careful examination of the record shows there is no basis for the claim of United Press that the evidence does not support the verdicts. There is testimony which would justify a verdict for defendant on the claim of United Press. There is a long and complicated argument by United Press, computing the amount of damages to which it was entitled as matter of right. According to this theory, no trial was necessary on the point, but only an adding machine or comptometer. The evidence of United Press is curiously divided into two lines. First, it attempted to prove that it could not give Charles a lower rate because its gross revenue from his business exceeded present cost of transacting it. Thus, there was no profit on the operation. Second, it was claiming damages for loss of profits for alleged breach amounting to over $20,000.00.

The recovery of damages consisting of lost profits is extremely difficult under any circumstances. The future is nebulous. Losses in the past may be fairly assessed. Profits to be made in the future are really the subject only of prophecy even by a jury. Where such a positive finding is made, it may often be affirmed. But, where a jury finds no damage or nominal damages only for expected profits and there are elements, as here, which leave the matter in doubt, affirmance should follow. The question was one of fact, which is the province of the jury.

We regard these assignments as untenable. If the question of the jury trial were not involved, we would hardly believe the appeal in good faith. Since a jury trial was proper, the appeal is dismissed.

Dismissed.

POPE, Circuit Judge (dissenting).

I find myself in agreement with much that is said in the majority opinion. Plainly both parties were anxious to go to trial, and did proceed at the time set. I certainly agree with the opinion's encomiums for the jury system as such. Of course all experienced lawyers agree in their admiration for our system of trial by jury. But I fail to see what any of this has to do with the facts or the law of this case.

My first point of disagreement concerns the statement that by not refusing to go to trial United Press waived its objection to the court's order for trial by jury. Under our system of trials the lawyer is permitted to record his objections, but when the ruling goes against him he is expected to conform. The court may deny his motion to dismiss, but he must answer over. It may refuse his offers of evidence, but he must try the case on what he gets in. It may reject his requested instructions, but he must argue on the basis of those given. Even in the case where what transpires warrants his motion for a mistrial, the court's denial of the motion does not occasion his refusal to proceed. He knows his remedy lies in his right to appeal. The suggestion in the court's opinion that after the court below ordered a jury trial plaintiff's counsel should have picked up his papers and walked out of the courtroom, and that because he did not do so he waived his objection, is surely

untenable. Courts are not run in that disorderly manner. The law does not impose upon a party the dilemma of either refusing to proceed and thus invite a dismissal, or else going ahead at the risk of waiver.

The crucial question in this case does not concern the time when the trial started. It concerns the time when the trial ended, and a decision was called for. It was then that the court failed in its duty to resolve the case.

My objection to the result here reached is based primarily upon the fact that the only judicial officer qualified or authorized to determine the issues of fact presented in this case has never done so. If this were a case properly triable to a jury whose verdict would have the same effect as if trial by jury were a matter of right, I would have no difficulty in concluding that the judgment here must be affirmed.[1] But the Federal Rules of Civil Procedure which settle the question whether this case was one for determination by the court, or by a jury, are too clear for argument or doubt, and when the trial ended the duty to decide rested squarely on the court.

The parties, by failure to make demand within the time fixed by Rule 38, waived trial by jury. Subsequently appellees moved for a jury trial notwithstanding their failure to make the demand. Such a motion was authorized by Rule 39(b). The court denied it. Nearly seven months later, and on the afternoon before the trial was to begin, the court, acting solely upon its own initiative, ordered a jury trial. The motion for jury, denied some months earlier, had not been renewed. Appellant objected to the order for jury trial, on the ground that its evidence, some of it taken by deposition, had been prepared on the assumption the case would be tried to the court. Stating, "it is a matter of indifference to me", counsel for appellees disclaimed any intention to make or renew any motion on his part.[2] The court had no motion before it; the prior motion was long since disposed of,—it was functus officio; it had not been renewed, and the court so considered the situation for its order recited: "Ordered, *sua sponte*, under Rule 39, F.R.C.P., that the case be tried by a jury." (Italics supplied).

The jury trial which the court may order under Rule 39(b),[3] may only be ordered "upon motion". This is made doubly plain by the provision in Rule 39(c) that the advisory jury there provided for may be ordered "upon motion *or of its own initiative*". (Emphasis added.) In my view, therefore, the judge could

1. It is impossible to tell from the verdict just what the jury decided. It is quite ambiguous. Literally, the verdict decided that the plaintiff was entitled to win, (and rejected the defense of breach of performance by plaintiff), and fixed plaintiff's damages at the very sum, to the penny, which it was admitted was due defendant on a counterclaim. Viewed in this light, the amount of the verdict, as I read the evidence, is wholly inadequate, but on the assumption here made, this would be a matter about which we could do nothing under the rule of Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439. It is possible, however, that the jury, in deciding to permit no recovery to either party, found the issue as to liability against the plaintiff and disregarded the charge that it must allow the counterclaim. So interpreted, the verdict when returned failed to conform to the court's instructions. Then, before the jury was discharged, the parties might have requested that the jury be required again to retire and correct or supplement their verdict. In Bradley Min. Co. v. Boice, 9 Cir., 194 F.2d 80, 82, we suggested the propriety of the rule, approved in California, that a party complaining of such a verdict, must make that request.

2. "I made no motion to the court for a jury trial at this time. I certainly wouldn't have done that without giving Mr. Dimond notice, and I assumed that there wouldn't be any jury."

3. "(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

not summon a jury for trial of the issues in the manner of a common law jury.[4] It does not aid the appellees to argue, as they do, that the court had the right of its own motion to call an advisory jury,[5] for there was no compliance with the mandatory requirements of Rule 52(a) that in such a case "the court shall find the facts specially." [6]

The suggestion in the majority opinion, that the Rules of Civil Procedure cannot restrict the power of the court to grant a jury trial at any time, be there prior waiver or not, seems to me to be wholly without reason or support. Assuming that a court, under the common law practice, or that prevailing before the rules, could order a jury trial notwithstanding a prior waiver thereof, yet this power cannot properly be treated as a part of the court's "jurisdiction" which cannot be limited by a rule. Rule 82 provides: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." But the limitation in Rule 39(b), which restricts an order for jury trial after prior waiver to cases where the court acts "upon motion" and not upon its own initiative is a purely procedural means for arriving at the mode of trial. It in no manner affects the jurisdiction of the court as fixed by the statute. In Mississippi Pub. Corp. v. Murphree, (supra, footnote 4) the Supreme Court pointed out, 326 U.S. at page 445, 66 S.Ct. at page 246, that the "jurisdiction" referred to in Rule 82 meant only "jurisdiction of the subject matter". The position of the majority cannot be squared with that. It would be as reasonable to argue that Rule 38(b) could not require demand for jury to be not later than 10 days after issue, as such a limitation, not known at common law, would be a limitation upon the court's jurisdiction!

The net result of all this is that appellant has been denied the findings, on the disputed questions of fact involved, to which the rules entitled it. The judge himself was the only judicial officer empowered to make these findings. In this, as in any other case properly triable to the court. "Rule 52(a) of the Federal Rules of Civil Procedure * * * requires the court to 'find the facts specially' ". Kelley v. Everglades Drainage District, 319 U.S. 415, 418, 63 S.Ct. 1141, 1143, 87 L.Ed. 1485. This requirement is mandatory, and where it is disregarded the appellate court must vacate the judgment and remand for appropriate findings.[7]

**4.** This view of the effect of Rule 39(b) is stated in a dictum in Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225, at page 228: "If the issues tendered by the pleadings are purely legal, the parties are entitled to a jury as of right, rule, 38(a), when demanded as provided in rule 38(b) (c). If no demand is made as provided for in subdivisions (b) and (c), the parties are deemed to have waived the right of trial by jury, but the court may in its discretion, upon motion of either party, order a jury trial of any or all issues, notwithstanding waiver under 38(b) (c), but may not order trial by jury on its own initiative. 3 Moore Federal Practice, 3030, § 39.03."

Moore, Federal Practice, 2nd ed. Vol. 5, p. 713, footnote 7, explains why the history of the drafting of the rule shows that the failure to provide for such an order on the court's own initiative was an intentional omission. Such construction of the Committee "is of weight". Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 444, 66 S.Ct. 242, 246, 90 L.Ed. 185.

In Sofarelli Bros. v. Elgin, 4 Cir., 129 F.2d 785, 787, the court indicated that the "authorities are not altogether agreed" on this point, but sustained the order for a jury trial in that case on the ground that there had been a sufficient demand for jury trial by one of the parties. No case cited by that court expresses any view contrary to that expressed in, the Hargrove dictum.

**5.** There appears to be a difference of opinion as to whether an advisory jury can ever be called in a law action. See Hargrove v. American Cent. Ins. Co., supra, holding it may not, and (American) Lumbermen's Mutual Casualty Co. of Illinois v. Timms & Howard, Inc., 2 Cir., 108 F.2d 497, contra.

**6.** The court, when requested to make its own findings, expressed the view that "there is no authority whatever for empanelling an advisory jury except in an equity action."

**7.** The cases so holding are collected in Steccone v. Morse-Starrett Products Co., 9 Cir., 191 F.2d 197, 200, in footnote 10.

The jury's verdict cannot be sustained on any conceivable theory of the evidence. If plaintiff was entitled to any damages, it should have a sum far in excess of the amount inserted in the verdict which was obviously merely an amount copied from the amount of the conceded counterclaim. If plaintiff was entitled to nothing, then defendant's counterclaim should have been allowed, and so the result cannot be explained on that ground. The court's error consists in its refusal to afford to appellant the determination of the facts which appellant was entitled to call for. Appellant has been prejudiced here, and justly complains, not on any mere technicality, but upon a most fundamental ground, namely, that it is the right of a litigant to call upon a judge to do the judging which the rules require him to perform.

It would be difficult to find a case presenting a more striking denial of fair consideration of the merits of a litigant's case. As appears from the order where the judge "sua sponte" directed a jury trial, this was prompted by his suggestion of some sort of partial disqualification. Apparently he thought he ought not find the facts, but that it would be all right to determine the law. In its labored effort to rationalize the jury's verdict, the majority opinion recites circumstances which bear no resemblance to the evidence of what the damages really were. It cannot conceal the fact that the verdict was obviously an effort of the jury to produce their idea of a rough justice that would give neither party anything, regardless of the law and the instructions. No litigant should be required to stand for that, where, as here, it was not only within the court's power, but its positive duty, to find the facts from the evidence. What happened to the appellant has no resemblance to a fair trial.

Finally, there is another respect in which there is error in the decision. The court told the jury the contract ran to September 27, 1957. Appellant says this date should have been September 27, 1962. In this it is right.

The contract provided for automatic renewal for periods of five years each in the absence of notice of termination. Through such renewals the contract was extended from October 3, 1948 to October 3, 1953. No notice of termination prior to this last date was given, and the contract was hence then renewed to October 3, 1958. In the meantime on February 21, 1950, a modification agreement was made, suspending the original rates, and reducing them. It provided: "The term of the agreement between the parties shall be extended by the length of time during which the above suspension is in effect." That modification agreement was subject to termination on 30 days notice, but remained in effect nearly four years and until defendants repudiated the agreement. The court held that the four years operated to make the whole contract terminate a few days prior to October 3, 1957. The appellant's position here is correct that when the suspension period ended the contract had already been extended to 1958, as I have said. The four years would therefore be added to that period.