621 F.2d 1088
 PARAMOUNT PICTURES CORPORATION, a corporation, Metro-Goldwyn
Mayer Inc., a corporation, Twentieth Century-Fox Film
Corporation, a corporation, Warner Brothers Distributing
Corporation, a corporation, Buena Vista Distribution Co.,
Inc., a corporation, United Artists Corporation, a
corporation, Universal Film Exchanges, Inc., a corporation,
Columbia Pictures Industries, Inc., a corporation, and
American International Pictures, Inc., Plaintiffs-Appellees,
v.
THOMPSON THEATRES, INC., a corporation, and Richard O.
Thompson, Individually, Defendants-Appellants.
 No. 78-1921.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 8, 1980.
Decided June 2, 1980.
 
 John Chiaf of Chiaf & Murphy, Oklahoma City, Okl., for defendants-appellants.
 John C. Harrington, Jr., of Lytle, Soule & Emery, Oklahoma City, Okl., for plaintiffs-appellees.
 Before McKAY, PECK* and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Thompson Theatres, Inc. and Richard O. Thompson (sometimes referred to as defendants) appeal from a judgment rendered against them in a diversity action brought by nine motion picture distributors alleging failure to pay sums due on rental agreements for the showing of motion pictures.
 
 
 2
 On appeal it is alleged (1) a request for a jury trial was improperly denied, (2) Richard O. Thompson should not have been found personally liable, (3) the evidence was insufficient to support the amount awarded, and (4) plaintiffs should not have been allowed attorney's fees.
 
 
 3
 The evidence showed that Richard O. Thompson was president and principal shareholder of a family owned corporation, Thompson Theatres, Inc., which operated six motion picture theaters in small Oklahoma towns. Under agreements, some signed by Thompson in his own name, the plaintiff motion picture distributors provided movies to be shown in those theaters. The contracts sued upon provided for a rental based upon a specified percentage of gross receipts derived from admissions to the theaters on the dates the pictures were exhibited.
 
 
 4
 The distributors charged that defendants submitted false statements of gross admission receipts with the intent to induce the distributors to accept less film rental than actually due and to persuade them to grant licenses on a lower percentage rate. The complaint alleged that both defendants engaged in a plan to defraud the distributors by such underreporting and that they breached the contracts by refusing to allow examination of sufficient records to conduct an audit. An accounting, punitive damages, attorney's fees and costs were sought.
 
 
 5
 The district court conducted a trial without a jury and found for the distributors against both defendants in the amount of $21,332.24, and awarded plaintiffs $5,000.00 attorney's fees.
 
 
 6
 * On May 7, 1974, several months after the time prescribed by Fed.R.Civ.P. 38(b) had expired, defendants requested a jury trial. Plaintiffs did not file a response to this request. In one of several pretrial orders, dated October 12, 1976, the court granted the jury demand. On July 20, 1977, a few days before trial was to commence, plaintiffs for the first time moved to have the case tried without a jury, pointing out the lateness of the demand by defendants and, in a supporting brief, arguing that this was an accounting action for which there is no right to jury trial. Two days later the court entered an order vacating its previous decision and denying the jury trial. At the outset of trial the court explained its reasons:
 
 
 7
 Earlier, I came to the conclusion it could be a jury case and entered an order, and I did set it before a jury. There is a jury here today to try it. However, I have come to the conclusion that it's an accounting matter and that and second, that you didn't ask for a jury under the rules, and that I should not exercise my discretion and permit you to have a jury now for the reason that if there is any question about it, it would be a case that would be hard to try before a jury, be confusing because there is the question of whether you accounted, and mixed questions of law and fact, and that even though it is a jury case and you are entitled to a jury, but since it is a matter of discretion, since the rules weren't complied with to give you a jury as a matter of right, I feel that I should exercise my discretion under the circumstances and deny you a jury at this time.
 
 
 8
 For purposes of this case we assume defendants were entitled to a jury trial under the principles announced in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). See also 5 Moore's Federal Practice P 38.25 (1979). By failing to make a timely demand defendants waived their rights. Hargrove v. American Cent. Ins. Co., 125 F.2d 225, 228 (10th Cir. 1942). The trial court then has the discretion, upon motion, to order trial by jury. Fed.R.Civ.P. 39(b). That discretion is broad, and the court's exercise, either to grant or to deny a jury trial, is reversible only if it appears from all of the facts and circumstances that the court abused its discretion. United States Fidelity & Guar. Co. v. Lembke, 328 F.2d 569 (10th Cir. 1964); Hazelrigg v. American Fidelity & Cas. Co., 241 F.2d 871 (10th Cir. 1957). Further, the court retains the power to alter rulings until final judgment is entered on a cause. See Fed.R.Civ.P. 54(b). Therefore, we think the same abuse of discretion standard applies to the reversal of a prior decision to grant a jury trial as applies to the initial grant or denial. Cf. Land v. Roper Corp., 531 F.2d 445, 450 (10th Cir. 1976) (judge made decision to empanel jury subject to later decision as to whether to use it). See also United Press Ass'ns. v. Charles, 245 F.2d 21 (9th Cir. 1957).
 
 
 9
 In AMF Tuboscope, Inc. v. Cunningham, 352 F.2d 150 (10th Cir. 1965), this Court held that the trial judge acted improperly when he reversed his earlier grant of a jury trial. But there the judge acted sua sponte on the eve of trial and contrary to a stipulation by the parties for a jury trial. Here there was no stipulation, and the court acted after a motion by a party. The apparent basis for the final decision to deny the jury trial was that the factual issues would be difficult to determine by a jury because the fact finding would entail examination of detailed accounting calculations made by the distributors' auditors from bank deposit records for six theaters over several years. We find no abuse of discretion by the trial judge in these circumstances. See William Goldman Theatres, Inc. v. Kirkpatrick, 154 F.2d 66 (3d Cir. 1946).
 
 II
 
 10
 Defendant Richard O. Thompson challenges the trial court's written finding that he is personally liable.[1] The court's decision appears to be based upon alternate theories that Thompson's actions constituted fraud and that the corporation was his alter ego. While there is some support in the record for the alter ego theory particularly the evidence that Thompson often ignored the corporate identity by signing the exhibition contracts in his own name we affirm on the evidence of Thompson's personal actions.
 
 
 11
 The determination of whether Thompson perpetrated a fraud is a question for the trier of fact. There is ample evidence in the record to support the conclusion reached by the trial court. Thompson was an experienced motion picture film exhibitor who methodically destroyed, every 30 to 35 days, the only original business records that could verify daily attendance and cash receipts from each of the six theaters for which he was responsible. We agree with the trial court that Thompson's testimony that he never read the contracts, which required retention of the records for four years, was incredible. Furthermore, Thompson's testimony that destruction was necessary because he had limited space in which to store such voluminous reports is inconsistent with his acknowledgement that the daily box office statement is a one-page document.
 
 III
 
 12
 Defendants argue that there is insufficient evidence to support the amount of the judgment awarded to the distributors. They specifically complain that plaintiffs failed to list certain pictures which were not subject to percentage rental agreements; that gross receipts for road show pictures were underestimated; and that receipts from Saturday previews were not deducted in arriving at the amount due the motion picture companies. Defendants have failed, however, to meet their burden of demonstrating that the amount of damages is clearly erroneous. See Fed.R.Civ.P. 52(a).
 
 
 13
 We have reviewed the record and agree with the trial judge that the distributors' method of analyzing and reconstructing Thompson Theatres, Inc.'s books and records to determine the amount of underreporting was in accordance with good accounting principles, industry standards and accepted procedures. Defendants' only evidence in rebuttal was Thompson's testimony based upon recollection and "experience in the business." Since defendants precipitated the difficulty in ascertaining the amount of damages by destroying the necessary records, they may not now complain of the resulting uncertainty. See L.C.L. Theatres, Inc. v. Columbia Pictures Indus. Inc., 421 F.Supp. 1090, 1102 (N.D.Tex.1976), rev'd in part on other grounds, 566 F.2d 494 (5th Cir. 1978). In these circumstances we cannot say that the distributors' calculations are improper or inaccurate.
 
 IV
 
 14
 The final issue is whether the trial court erred in granting attorney's fees. As a general rule, trial courts are without authority to award attorney's fees unless the right exists by contract or statute. In this case only one or two of the contracts expressly allow the distributors attorney's fees. The parties are in apparent agreement that if a right to attorney's fees exists by statute, it is under authority of Okla.Stat.Ann. tit. 12 § 936 (West 1979 Supp.), which provides:
 
 
 15
 In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to (of) the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.
 
 
 16
 These film rental contracts, we believe, do not qualify as contracts "relating to the purchase or sale of goods, wares, or merchandise." Thus to fall within the purview of the statute the claims must qualify as claims on an "open account," a "statement of account," or an "account stated." The Oklahoma Supreme Court has defined an open account for purposes of awarding attorney's fees as "one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions. * * * An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." Sanditen v. Brooks Flame-Spray, Inc., 403 P.2d 471 (Okl.1965) (quoting an earlier decision). See also Nicholson v. Thixton, 448 P.2d 454, 455 (Okl.1968); Palmer v. Stokely, 255 F.Supp. 674 (W.D.Okl.1966). Attorney's fees have been denied under the statute in cases involving claims for oil royalty payments. Olansen v. Texaco, Inc., 587 P.2d 976 (Okl.1978) (treated as a tort claim for conversion), and for alleged deficiencies in payment of royalties on a patent, Bickford v. John E. Mitchell Co., 595 F.2d 540 (10th Cir. 1979). We believe the claims asserted here do not fairly fall within the statute. The contracts between these parties were express. The only term ever left open was the exact amount due, but this figure was based on a fixed percentage of actual theater attendance. Therefore, we hold the award of attorney's fees was improper insofar as it was based upon Okla.Stat.Ann. tit. 12 § 936 (West Supp.1979).
 
 
 17
 Accordingly, the judgment of the district court is affirmed except that portion granting attorney's fees, which is reversed. That aspect of the case is remanded to the district court for consideration of appropriate attorney's fees under any contracts that specifically provide for such an award. Upon remand the trial court should resolve the conflict between the parties over the question whether only one or two or more of the exhibition contracts provide for attorney's fees. See Appellants' Brief, p. 19; Appellees' Brief, p. 24. The appellate record does not appear to contain all of the relevant contracts.
 
 
 18
 Affirmed in part, reversed in part, and remanded for proceedings consistent herewith.
 
 
 
 *
 Of the United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 Thompson also contends that certain remarks made by the trial judge at the conclusion of trial constituted an oral finding exonerating Thompson individually. We do not so construe those remarks; we believe the court reserved judgment pending study