George **RICHARDSON**, Plaintiff.

v.

**ST. CHARLES–ST. JOHN the BAPTIST BRIDGE & FERRY AUTHORITY, and St. Paul Fire & Marine Insurance Company, Defendants.**

George **RICHARDSON**, Plaintiff,

v.

**POWER RIG DRILLING COMPANY, Morgan W. Stevens, and Argonaut Insurance Company, Defendants.**

**Civ. A. Nos. 67–815, 67–1038.**

United States District Court
E. D. Louisiana,
New Orleans Division.

May 14, 1968.

**710**

See also D.C., 274 F.Supp. 764.

Orlando G. Bendana, New Orleans, La., for plaintiff.

J. Y. Gilmore, Jr., New Orleans, La., for St. Charles-St. John the Baptist Bridge & Ferry Authority.

Thomas C. Wicker, Jr., New Orleans, La., for St. Paul Fire & Marine Ins. Co.

George V. Baus, New Orleans, La., for Power Rig Drilling Co., Morgan W. Stevens and Argonaut Ins. Co.

RUBIN, District Judge:

## FINDINGS OF FACT

1. On November 17, 1966, the plaintiff, George Richardson, was employed by the St. Charles-St. John the Baptist Bridge & Ferry Authority ("the Authority") as a deckhand on its ferry, the M/V OLLIE K. WYLDS, on the navigable waters of the Mississippi River near Luling, Louisiana.

2. Richardson has never been a steady worker, but was earning approximately $275.00 per month prior to the accident.[1]

The Authority furnished Richardson with neither food nor lodging.

3. On the evening of November 17, 1966, Morgan W. Stevens, an employee of Power Rig Drilling Company ("Power Rig") not then acting within the scope of his employment, was on board the ferry in an automobile owned by Power Rig and insured by the Argonaut Insurance Company ("Argonaut").

4. Stevens fell asleep in his automobile while the ferry was crossing the river from its east to west bank.

5. After the ferry was moored on the west bank of the river, an employee of the ferry awakened Stevens, and Richardson signaled Stevens to drive off. In doing so, Stevens drove into Richardson.

6. At the time of the accident Richardson was situated ahead of and to the left of Stevens' automobile.

7. There was adequate space to the right of Stevens' automobile to drive off the ferry without striking Richardson.

8. The sole proximate cause of the accident was Stevens' negligence in driving into Richardson.

9. The evidence fails to disclose any negligence on the part of the Authority. Richardson was provided with a safe place to work and the M/V OLLIE K. WYLDS was seaworthy and properly equipped and supplied.

10. As a result of the accident Richardson has suffered an eight (8%) per cent disability of the body as a whole. He was hospitalized six (6) days at the St. Charles Hospital in Luling, Louisiana, for treatment of contusions and abrasions of the chest, hips, and lower back and for a compression fracture of the fourth lumbar vertebra. After discharge from the hospital, he continued to be treated by Dr. J. R. Nelson until he reached maximum cure on March 21, 1967. During that period Richardson apparently worked for approximately three (3) days and was paid $27.50.

11. As a proximate result of the accident, Richardson can no longer work as a deckhand. Because of his age (65), his lack of education, and what the testifying psychologist describes as his "borderline effective intellect," it is unlikely that he can be trained to perform any other type of work. As a result, for all practical purposes, Richardson is unemployable.

12. Richardson has sustained total damages of $7,166.31, broken down as follows:

a. Disability and loss of wages: $4,125.00.

(While at the time of the accident Richardson may have had a longer work expectancy than fifteen months, multiplying his salary at the time of the accident ($275) by fifteen is a fair measure of the total loss he has sustained in view of the fact that he has not demonstrated that he has been a steady worker in the past.)

b. Medical expenses: $541.31.

(These were paid by the Authority's insurer, St. Paul Fire & Marine Insurance Company ("St. Paul"), under the provisions of the Louisiana Workmen's Compensation Act.)

c. Pain and suffering: $2,500.00.

1. Richardson's pay was raised from $245 per month to $275 per month in October of 1966.

13. Wages until the end of the month of injury amount to $115.31 [($275 ÷ 31) x 13=$115.31].

14. Maintenance of $6.00 per day from the date of the accident until the time of maximum cure amounts to $744.00 [$6.00 x 124 days=$744.00]. Deducting maintenance for the period during which Richardson was hospitalized [$6.00 x 6=$36.00] and during which he worked for the Authority [$6.00 x 3=$18.00] leaves a total of $690.00.

15. Richardson received compensation payments from St. Paul under the provisions of the Louisiana Workmen's Compensation Act in the amount of $805.00.

16. Richardson filed two (2) suits: one, styled "Petition for Damages, Maritime Tort," was brought against Stevens, Power Rig, and Argonaut; the other was brought against the Authority and St. Paul seeking damages for negligence under the Jones Act, for unseaworthiness under the general maritime law, and for capricious refusal to provide maintenance. St. Paul intervened in the suit against Stevens, Power Rig, and Argonaut for medical and compensation payments made. St. Paul also filed a third-party petition against the same parties in Richardson's suit against the Authority and St. Paul. The two cases were consolidated, and the Authority then filed a cross-claim against Stevens, Power Rig, and Argonaut, claiming reimbursement for expenses expended, or for liability imposed, as a result of the accident. Stevens, Power Rig, and Argonaut also filed a cross-claim against the Authority and St. Paul.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this suit.

2. Because the plaintiff was provided with a safe place to work and because the M/V OLLIE K. WYLDS was not unseaworthy, the Authority and its insurer, St. Paul, are entitled to judgment exonerating them from liability on claims of negligence and unseaworthiness.

3. The plaintiff is entitled to a judgment against Stevens and Argonaut for disability and loss of past and future wages ($4,125.00), medical expenses ($541.31), and pain and suffering ($2,500.00) in the amount of $7,166.31, with recognition of the right of St. Paul to repayment of $1,346.31 to cover compensation payments made to and medical expenses paid in behalf of the plaintiff under the provisions of the Louisiana Workmen's Compensation Act. LSA–R.S. §§ 23:1101–23:1103, 23:1162, subd. D.

4. The plaintiff is entitled to maintenance in the amount of $690.00, notwithstanding the fact that the shipowner did not provide the seaman with room and board. Hudspeth v. Atlantic & Gulf Stevedores, Inc., E.D.La., 1967, 266 F.Supp. 937. In view of the payment of compensation benefits and the plaintiff's failure to show that the failure to pay maintenance benefits was "callous," or "arbitrary and unreasonable," [2] damages for refusal to pay maintenance are denied.

5. The plaintiff is not entitled to collect both under the maritime law for wages to the end of the month in which he was injured and tort damages for total lost wages. However, the plaintiff is entitled to collect both tort damages and maintenance.

The duty of a shipowner to provide his seaman maintenance and cure is "[a]mong the most pervasive incidents of the responsibility anciently imposed upon a shipowner * * *." Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107. The duty is "imposed by the law itself as one annexed to the employment [of the seaman by this shipowner]. * * * [I]t is [contractual] in the sense that it has its source in a relation which is con-

2. See cases cited in Hudspeth v. Atlantic & Gulf Stevedores, Inc., E.D.La., 1967, 266 F.Supp. 937, 945.

tractual in origin, but, given the relation, no agreement is competent to abrogate the incident." Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (Cardozo, J.). Consequently, "[T]he right to maintenance, cure and wages, implied in law as a contractual obligation arising out of the nature of the employment, is independent of the right to indemnity or compensatory damages for an injury caused by negligence; and these two rights are consistent and cumulative." Pacific S.S. Co. v. Peterson, 1928, 278 U.S. 130, 138, 49 S.Ct. 75, 77, 73 L.Ed. 220.

■ Nevertheless, it is clear that a seaman cannot recover twice for the same elements of damage. Vickers v. Tumey, 5 Cir., 1961, 290 F.2d 426, 435; Smith v. Lykes Brothers-Ripley S.S. Co., 5 Cir., 1939, 105 F.2d 604, 606. Accord, Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 2 Cir., 1961, 298 F.2d 918, 921–922; McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 727, 729. See also Gilmore and Black, The Law of Admiralty 261; Norris, The Law of Seamen § 555.[3] Thus, when a seaman has sought to obtain from the shipowner both the amount of the loss he suffered when he ceased to receive food and lodging—"found"—and maintenance in addition, the courts have refused to allow recovery of both. E. g., Alexandervich v. Gallagher Bros. Sand & Gravel Corp., supra; McCarthy v. American Eastern Corporation, supra; see Smith v. Lykes Brothers-Ripley S.S. Co., supra. Similarly, where seamen have sought to recover both found [and medical expenses] from the tortfeasor causing the injury and maintenance [and cure] from the shipowner, the courts have said that the tortfeasor is primarily liable, with the result that the shipowner owes maintenance and cure only if the tortfeasor does not satisfy the judgment entered for compensatory damages. E. g., Seely v. City of New York, 2 Cir., 1928, 24 F.2d 412. The maritime law thus apparently has refused to permit the "double recovery" allowed a plaintiff under general tort law when he is granted a tort judgment for full compensatory damages notwithstanding the fact that he has been paid for some of those items under an accident insurance policy. See 2 Harper and James, The Law of Torts § 25.22, p. 1351. Maritime law likewise denies double recovery of wages,[4] despite the fact that "wages payable by contract during periods of disability are generally treated like the proceeds of accident insurance." 2 Harper and James, The Law of Torts, supra. See also, Restatement, Torts § 920, Comment e. Therefore, since the plaintiff is recovering from the tortfeasor for the wages actually lost by him, the Authority will be liable for wages of $115.31 (representing the remainder of wages for the month in which the plaintiff was injured) only if Stevens and Argonaut fail to satisfy the decree against them.

When we turn aside from wages to consider maintenance alone, this case does not present a situation in which a plaintiff is seeking to recover twice for the same elements of damage. Plaintiff's tort recovery against Stevens and Argonaut does not include compensation for loss of found, so an award of maintenance here would not duplicate any damages covered by his tort judgment. To be sure, if the plaintiff is awarded both compensatory damages and maintenance, he will recover more than he has actually lost.[5] But this is a result of the unique nature of the rights granted by the maritime law to the seafaring man and to those whose service on less hazardous waters entitle them to the seafarer's benefits. Hence, when the shipowner is called upon to perform his own obligation to pay maintenance, he has no cause to complain merely because his seaman will

---

3. But see 1 Edelman, Maritime Injury and Death 58–59 (1960).

4. Pavlakis v. Seacrest Shipping Company, D.Md., 1955, 136 F.Supp. 553, 559.

5. This is not to say that Richardson incurred no expense for his food and lodging. Compare Johnson v. United States, 1948, 333 U.S. 46, 50, 68 S.Ct. 391, 92 L.Ed. 468.

recover this in addition to full compensatory damages.

■ 6. The bog becomes Serbonian when we try to determine who should bear the cost of maintenance: the choice is between the shipowner, who is in no way at fault, and the tortfeasor, who is responsible for the plaintiff's injury but has already been cast for all the plaintiff's damages.

It bears repetition at this point that the jurisprudence establishes, "[w]hen the injured seaman joins the shipowner and the tortfeasor in the same action, * * * the entire judgment, both for damages and for maintenance and cure, should run in the first instance against the tortfeasor, the shipowner being only secondarily liable for that part of the judgment allocable to maintenance and cure. Thus the shipowner will not have to pay unless execution is returned unsatisfied against the 'primary debtor.'" Gilmore and Black, The Law of Admiralty 272 (footnote omitted). See Seely v. City of New York, supra; The Jefferson Myers, 2 Cir., 1930, 45 F.2d 162. Thus, the burden of maintenance and cure is on the tortfeasor when his negligence has caused the seaman's injury.[6]

These cases merely impose on the tortfeasor liability for an amount equal to the value of the seaman's found when the tortfeasor has caused an actual loss of board and lodging. However, the rationale of Jones v. Waterman S.S. Corporation, 3 Cir., 1946, 155 F.2d 992, does support placing on the tortfeasor causing a seaman's injury the ultimate liability for maintenance payments made to a seaman not entitled to found. In the *Waterman* litigation the seaman first sought recovery against a railroad for injuries received when he fell off a pier into an open ditch along a siding owned and operated by the railroad. There was a verdict against the railroad, the trial court granted a motion for a new trial, and the case was then settled. The seaman also brought an action against the shipowner for maintenance and cure. The shipowner impleaded the railroad, asserting that the railroad was liable to the shipowner for any maintenance and cure that the shipowner was ordered to pay. On appeal of the seaman's case against the shipowner, the Third Circuit, assuming arguendo that the seaman's injuries were caused by the railroad's negligence, held that the shipowner was entitled to recover from the railroad for maintenance and cure to be paid the seaman. Judge Biggs reasoned that, since an employer could recover damages from a tortfeasor on account of loss of services that the employer sustained by reason of negligent injury to an employee, "[i]t would seem to follow * * * as a matter of logic that if the master by virtue of his contract of employment with the servant is compelled to maintain and cure his servant during the latter's illness the master should be permitted to recover these sums from the wrongdoer as part of the remedy afforded him in his cause of action against the wrongdoer." 155 F.2d at 999.[7]

---

6. Similarly, the shipowner's obligation to pay maintenance and cure is reduced to the extent a prior settlement by the seaman with the tortfeasor includes compensation for maintenance and cure. Muise v. Abbott, 1 Cir., 1947, 160 F.2d 590; Gomes v. Eastern Gas and Fuel Associates, D.Mass., 1954, 127 F.Supp. 435.

7. In *Waterman* the determination of whether the shipowner was entitled to recover maintenance expenses from the tortfeasor was held to turn on the law of Pennsylvania, apparently because the injury to the seaman occurred on land—a pier being viewed as an extension of the land. See Jones v. Waterman S.S. Corporation, 3 Cir., 1946, 155 F.2d 992, 997 and nn. 3 and 4. However, I do not view the rationale of *Waterman* as limited to cases in which Pennsylvania law controls. Other courts likewise have viewed the *Waterman* case as standing for a broader rule. See, e. g., United States v. The Manzanillo, D.Or., 1960, 190 F.Supp. 229, 232–233, rev'd on other grounds, 9 Cir., 1962, 310 F.2d 220. I similarly find unconvincing any contention that the *Waterman* case is limited to cases in which a warranty of due care

The same analogy would allow recovery from the tortfeasor of maintenance paid the seaman not only when the seaman is entitled to collect found from the tortfeasor as part of the seaman's tort recovery, but also when the shipowner has properly paid maintenance to a seaman who had not been furnished room and board by the shipowner. It should not be surprising that the courts that have considered this question have not agreed on an answer. Quixotically— and, no doubt, to the surprise of those not initiated into the mysteries of the law—a different result may be reached dependent entirely upon the time when and the way in which the claim is asserted. If a seaman joins both the tortfeasor and the shipowner in the same suit, the owner is universally allowed to pass the maintenance burden on to the tortfeasor. If maintenance is sought from the shipowner after the seaman has collected found from the tortfeasor, no recovery of maintenance is allowed.[8] But when a shipowner seeks to achieve the same substantive result by bringing an independent action against the tortfeasor for maintenance and cure paid by him to his employees,[9] or by impleading the tortfeasor when the shipowner is sued for maintenance,[10] the shipowner has been denied recovery. See Gilmore and Black, The Law of Admiralty 273 et seq. The effect of these cases is to deny the shipowner a right over for maintenance and cure against the tortfeasor if the seaman has not elected to sue the shipowner jointly with the tortfeasor or if the seaman elects to sue the shipowner prior to the seaman's settlement with the tortfeasor.

This is what happened in The Federal No. 2, 2 Cir., 1927, 21 F.2d 313. A seaman was injured due to the negligence of the defendant while the seaman was employed by the plaintiff. The plaintiff incurred expenses for the seaman's maintenance and cure and sought reimbursement from the defendant. In an opinion by Judge Manton, in which Judge Augustus Hand and Judge Swan concurred only in the result, recovery was denied; the court rejected the argument that the right of a shipowner to recover maintenance and cure from a tortfeasor is analogous to a father's right to collect for loss of services and expense of curing his child from a person negligently injuring the child. The court concluded that the "social condition" existing between father and child "does not exist in the relationship of a seaman and his employer. It is a contractual obligation, which [the employer] must perform, that imposes this responsibility, even though it be a special damage he suffers from a tortious act." 21 F.2d at 314.

The law does not always proceed either by logic or by analogy, and sometimes neither simile nor syllogism alone can solve difficult problems. However, to the extent that analogy is appropriate, there is more to be said for Judge Biggs'

---

by the tortfeasor is implicit in a contract between the shipowner and the tortfeasor. A fair reading of the *Waterman* case suggests that its rationale is not limited to such situations.

Finally, I do not view the reversal of the district court decision in United States v. Standard Oil Co. of California, S.D. Cal., 60 F.Supp. 807, rev'd 9 Cir., 1946, 153 F.2d 958, aff'd, 1947, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067, as undermining the result reached by Judge Biggs in *Waterman*. The Supreme Court's refusal in *Standard Oil* to create a right in the Government to sue a tortfeasor for medical expenses and wages paid an injured soldier as a result of the tortfeasor's negligence was bottomed on its

conclusion that the "issue comes down in final consequence to a question of federal fiscal policy." Because of that, the Court concluded, "[w]hatever the merits of the policy, its conversion into law is a proper subject for congressional action, not for any creative power of ours." 332 U.S. at 314, 67 S.Ct. at 1611. The same considerations are not present here.

8. See note 6 supra.

9. E. g., The Federal No. 2, 2 Cir., 1927, 21 F.2d 313.

10. E. g., Irwin v. United States, E.D. N.Y., 1953, 111 F.Supp. 912, 919 (dictum), aff'd on other grounds, 2 Cir., 1956, 236 F.2d 774.

conclusion in *Waterman* that "the relationship of the shipowner to the seaman is more closely analogous to that of a father and child than to that of an employer to a mere employee," and that "a higher degree of dignity [ought to be imposed] upon the ship-seaman relationship, awarding to it a status or a 'social condition' in excess of that given under the ruling in The Federal No. 2." Jones v. Waterman S.S. Corporation, supra, 155 F.2d at 1000–1001. But whether or not the court in *The Federal No. 2* properly characterized the relationship between shipowner and seaman, the result reached in *The Federal No. 2* is a poor one from the standpoint of policy. Determination of who should bear the cost of maintenance and cure ought not to turn on the sequence or the manner in which the seaman chooses to sue the parties. Yet, under the aproach taken in *The Federal No. 2,* this is exactly what occurs. The result has been criticized,[11] and it is inconsistent with the liberalized pleading and third-party provisions of The Federal Rules of Civil Procedure—"[t]he very purpose of [which] was to eliminate complaints as to the 'technicalities of the law, the subtleties of practice and the involvements of procedure.'" United Press Associations v. Charles, 9 Cir., 1957, 245 F:2d 21, 26, 17 Alaska 46.

In addition, notwithstanding the contrary position taken in analogous situations by Professors Harper and James,[12] it seems only fair that in allocating the burden of paying for maintenance and cure between an innocent shipowner and a tortfeasor whose negligence caused a seaman's injury, the person who caused the injury ought to bear the primary responsibility. "Equity is no stranger in admiralty," Vaughan v. Atkinson, 1962, 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88, and equity is done in such situations by placing primary liability for maintenance and cure on the tortfeasor who caused the seaman's injury. Cf. Gooden v. Sinclair Refining Company, 3 Cir., 1967, 378 F.2d 576.

Imposition of liability on the tortfeasor for maintenance and cure is not too "indirect" a consequence of his negligence to allow recovery. The shipowner's obligation—imposed by the law itself—is not so unforeseeable by a tortfeasor as to bar recovery. This is not a private contractual obligation undertaken by the shipowner.[13] Thus, this case is not analogous to the insurance cases in which recovery due to negligent injury to property or persons has been denied the insurer in the absence of a right of subrogation to the claim of the person directly injured. See Prosser, The Law of Torts 963 (1964).

In sum, an innocent shipowner ought to have a right over against a tortfeasor for maintenance and cure payments made as a result of injury to a seaman caused by the tortfeasor's negligence. Jones v. Waterman S.S. Corporation, supra; United States v. The Manzanillo, D.Or., 1960, 190 F.Supp. 229, 232–233, rev'd on other grounds, 9 Cir., 1962, 310 F.2d 220; Gilmore and Black, The Law of Admiralty 273–277; cf. Myles v. Quinn Menhaden Fisheries, Inc., 5 Cir., 1962, 302 F.2d 146, 150–151; Pure Oil Company v. Geotechnical Corporation of Delaware, E.D. La., 1955, 129 F.Supp. 194, 198; Pabellon v. Grace Line, S.D. N.Y., 1951, 12 F.R.D. 123, 125 (dictum). See also Bue, Admiralty Law in the Fifth Circuit—A Compendium for Practitioners, 4 Houston L. Rev. 347, 370 (1966).

No different result should be reached here merely because the plaintiff did not suffer any actual loss of room and board as a result of his injury. The foreseeability of maintenance is the same wheth-

---

11. Gilmore and Black, The Law of Admiralty 276–277; 1 Edelman, Maritime Injury and Death 58 (1960).

12. 2 Harper and James, The Law of Torts § 25.23.

13. Compare Prosser, The Law of Torts 964 (1964):
"In all of the cases denying recovery the defendant had no knowledge of the contractual relation and no reason to foresee any harm to the plaintiff's interests.
* * * *"

er it is to be paid to a seaman who has lost room and board or to a seaman who has not. While the equitable considerations militating for imposition on the tortfeasor of maintenance expenses are greater where a seaman has suffered an actual loss of room and board—and thus is entitled to found from the tortfeasor—the difference does not require a different result. Therefore, the Authority is allowed recovery over against Stevens and Argonaut for $690.00.

7. The awarding of interest is a matter within the Court's discretion. The Wright, 2 Cir., 1940, 109 F.2d 699, 702. See also 2 Norris, The Law of Seamen § 639. Therefore, interest will be allowed at five (5) per cent from the date of judicial demand.

Judgment will be entered in favor of plaintiff and against Stevens and Argonaut in the amount of $7,166.31, with recognition of the right of St. Paul to repayment of $1,346.31. Judgment will be entered in favor of the plaintiff and against the Authority in the amount of $690.00, with judgment over against Stevens and Argonaut. Interest on plaintiff's net awards of $5,820.00 and $690.00 will be computed from the respective dates of judicial demands.