400 So.2d 695 (1981)
Everette P. HEBERT
v.
AETNA CASUALTY AND SURETY COMPANY et al.
No. 14137.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*696 Joseph L. Waitz, Houma, for plaintiff and appellee.
J. Mark Graham, Houma, for defendant and appellant Aetna Cas. & Sur. Co.
Henry D. McNamara, Jr., Metairie, for defendant Diamond M Co.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
The present action is a sequel to the proceedings entitled "Everette P. Hebert v. Diamond M Company, et al.", number 54,202 on the docket of the Thirty-Second Judicial District Court, Parish of Terrebonne, State of Louisiana, and reported in this Court as Hebert v. Diamond M Company, 385 So.2d 410 (La.App. 1 Cir. 1980), writs denied, 390 So.2d 203 (La.1980).
In the proceedings against Diamond M, Hebert sought to collect for damages sustained by him as a seaman employed by Dowell, Inc., a division of Dow Chemical Company, when he was dropped as he was being lifted from a crew boat, the M/V MASTER JODY, in a personnel carrier *697 which was suspended from a crane located aboard Diamond M's tender barge, S-25, which served as an Exxon fixed platform in the Gulf of Mexico, off the coast of the State of Louisiana. Aetna Casualty and Surety Company, as Dowell's insurer, intervened for maintenance and cure benefits and medical expenses it had to pay to the plaintiff as a result of the injury.
Prior to trial in the damage action against Diamond M, stipulations were made regarding the intervenor's claim whereby the parties recognized Aetna's right to reimbursement of maintenance benefits paid to plaintiff in the sum of $2,984.00, and for medical expenses in the sum of $10,613.40, which sums were to be added to any award to plaintiff, but were to be paid directly to Aetna. The matter then came on for jury trial on January 29, 1979. During trial, Diamond M admitted liability and that plaintiff was a seaman.
The jury rendered a verdict in plaintiff's favor against Diamond M in the sum of $470,000.00 for loss of future earnings, $104,000.00 for pain, suffering, mental anguish and disability, and $76,000.00 for future medical expenses, totalling $650,000.00 The jury also returned a general verdict in favor of the plaintiff in a like amount.
On March 8, 1979, the trial court, with written reasons for judgment, rendered and signed judgment in favor of Hebert against Diamond M in the sum of $1,046,000.00, together with legal interest from date of judicial demand and costs. Judgment was also entered in favor of intervenor, Aetna, in accordance with the pre-trial stipulations.
Diamond M appealed that portion of the judgment against it in favor of plaintiff; and paid that portion of the judgment against it in favor of Aetna, obtaining a satisfaction of judgment and release therefor. The judgment in favor of Everette P. Hebert and against Diamond M Company was modified on appeal by this Court.
After the trial, Aetna ceased paying maintenance and cure benefits to Hebert, giving rise to the filing of the instant proceedings on June 30, 1979. By his action, plaintiff seeks maintenance and cure and medical expenses, together with damages and attorney's fees against Aetna, Dowell and Diamond M, jointly and solidarily, along with damages for failure to pay.
Aetna answered plaintiff's petition denying any obligation to the plaintiff; and filed a third-party demand seeking, alternatively, indemnity or contribution from Diamond M, which responded to the plaintiff's petition and the third-party demand of Aetna.
The matter was set for trial on August 30, 1979, and was tried on that date. At the trial, on motion of plaintiff, his demand against Dowell was non-suited. After trial, the trial court rendered judgment, orally assigning reasons therefore, ordering Aetna to resume payment of benefits to Hebert until the judgment in the Hebert-Diamond M case was satisfied, and reserving to Aetna the right to claim reimbursement from Diamond M. Penalties and attorney's fees were denied. Judgment was signed on November 27, 1979. Plaintiff moved the court for a new trial; and subsequently, Aetna also moved for a new trial. A hearing was held on those motions, resulting in the court's ordering a new trial as to all parties and all claims.
The new trial was set for May 1, 1980. Aetna then filed a reconventional demand seeking, in the alternative, judgment against the plaintiff in a like amount for any judgment which was rendered in the instant proceedings against it in favor of plaintiff, with such judgment to be recoverable by Aetna only from proceeds received by plaintiff from Diamond M as a result of the initial proceedings filed against that defendant. Answer to the reconventional demand was filed and trial was held on that claim, as well as on the other claims.
After this trial, the matter was taken under advisement; and, on July 30, 1980, judgment was signed, with written reasons therefor, awarding benefits, damages, and attorney's fees in favor of Hebert against Aetna. Aetna has taken an appeal from that judgment, and Hebert has answered it, *698 seeking an increase in the award. We affirm.
First, appellant has a procedural objection that the plaintiff has no cause of action directly against his employer's insurer inasmuch as he has neither alleged nor proved that the insurance policy was issued or delivered in the State of Louisiana, or that the accident or injury occurred in this State as required by LSA-R.S. 22:655.
This objection is more properly an exception of no right of action. Vincent v. Penrod Drilling Co., 372 So.2d 807 (La.App. 3 Cir. 1979), writ denied, 375 So.2d 646 (La.1979). However, by whatever characterization, it is without merit. This is not only a suit against Aetna as Hebert's employer's insurer but as tortfeasor, so the requisites of the direct action statute need not be met. Nevertheless, they were met; the record clearly establishes that the present action is against the insurer for an "accident," or act producing the harm, to Hebert which occurred within this State. Sprow v. Hartford Insurance Company, 594 F.2d 412 (C.A. 5 Cir. 1979); Cambre v. St. Paul Fire and Marine Insurance Company, 331 So.2d 585 (La.App. 1 Cir. 1976), writ denied, 334 So.2d 434 (La.1976). The act producing the harm, or the accident, in the case at bar is alleged to be the capricious failure of the employer and its insurer to provide the seaman with maintenance and cure. Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Picou v. American Offshore Fleet, Inc., 576 F.2d 585 (C.A. 5 Cir. 1978). The alleged act took place in Louisiana where the claim was administered and which was the home base of the insurer's representative who refused to continue paying maintenance and cure to Hebert. There is also a claim for damages for aggravation of Hebert's mental condition which could only have occurred in Louisiana. This claim for capricious failure to pay maintenance is a distinct claim from the claim for injuries against Diamond M for its tort on the high seas. See Cortes v. Baltimore Insular Line, supra. The seaman's right to maintenance and cure is predicated upon the maritime employment contract and does not depend upon the seaman being able to establish fault or a tortious activity. Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).
We hold that the trial court's overruling of Aetna's exception of no cause of action is correct. There is no merit in the appellant's contention that it can not be sued directly under the direct action statute. LSA-R.S. 22:655.
The plaintiff claims in the instant suit that his employer has failed to continue paying him the maintenance and cure to which he is entitled; that although his employer did pay him some maintenance and cure, it ceased such payments after the trial of his suit against the initial tortfeasor, Diamond M, despite the fact that he has not yet recovered an enforceable judgment from the tortfeasor.
On this question, Aetna asserts that to permit the employee to recover from his employer (and insurer) once he has sued the tortfeasor is to allow him a "double recovery."
We find that the nature of the employer's obligation to pay maintenance and cure militates against Aetna's position. For a general discussion of maintenance and cure, see Annot., Supreme Court's Views As To A Seaman's Right, Under Maritime Law, to Maintenance and Cure, 43 L.Ed.2d 912.
The obligation of a shipowner (employer) to provide his seaman maintenance and cure is "[a]mong the most pervasive incidents of the responsibility anciently imposed upon a shipowner...." Aguilar v. Standard Oil Co. of New Jersey, supra, 70 Am.Jur.2d "Shipping", § 220, p. 427.
The duty of the shipowner (employer) to pay the seaman maintenance and cure derives historically from the "unique hazards" of the sailor's work; it is imposed by law definitely on the shipowner, irrespective of fault (short of culpable misconduct), arising from the relationship of shipowner and seaman, and is calculated to alleviate the injured or ill seaman's want and suffering during convalescence until he *699 reaches maximum care. Vella v. Ford Motor Company, 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Aguilar v. Standard Oil Co. of New Jersey, supra; Cortes v. Baltimore Insular Line, supra; Sims v. Marine Catering Service, Inc., 217 F.Supp. 511 (D.La.1963).
Maintenance and cure benefits are predicated on a seaman's maritime employment contract, being consistently recognized as an implied provision in contracts with marine employment. Aguilar v. Standard Oil Co. of New Jersey, supra. Thus, the payment of maintenance and cure is a contractual obligation which the employer must perform, even though it is a special damage the seaman suffered from a tortious act. The cause of the responsibility is the contract; the tort is the remote occasion. See The Federal No. 2, 21 F.2d 313 (C.A. 2 Cir. 1927); see also Jones v. Waterman S.S. Corporation, 155 F.2d 992 (C.A. 3 Cir. 1946).
It was said by the Supreme Court in Pacific S.S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928):
"[T]he right to maintenance, cure and wages, implied in law as a contractual obligation arising out of the nature of the employment, is independent of the right to indemnity or compensatory damages for an injury caused by negligence; and these two rights are consistent and cumulative."
The appellant does not contend that Mr. Hebert has reached maximum medical recovery or that he should be denied maintenance benefits because of culpable misconduct; it is Aetna's position that it had a right to cease payment of maintenance and cure to the plaintiff because judgment in his favor had been rendered by the trial court for such benefits from the tortfeasor. In this connection, we find Aetna's reliance upon Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Authority, 284 F.Supp. 709 (E.D.La.1968), misplaced. The Richardson case extends recovery to the seaman even though he did not suffer any actual loss of berth and sustenance (room and board) as a result of his injury, and makes the tortfeasor ultimately liable for maintenance benefits.
The adequate protection of a seaman requires more than a possibility that he may receive maintenance benefits at an indefinite future time from a tortfeasor who may be proven liable for injuries to him. The concept of maintenance and cure contemplates that the injured or ill seaman will promptly receive such benefits at a time contemporaneous to the injury or illness. A shipowner (employer) is, therefore, not allowed to withhold maintenance benefits in the expectation that the seaman will eventually recover such benefits from the tortfeasor. Rather, the employer is to pay the seaman promptly and contemporaneously in the hope that it (the employer) may at some future time be reimbursed for such payments from the tortfeasor. In other words, the employer has a right over against the tortfeasor so that the ultimate liability for maintenance and cure is placed on the tortfeasor who caused the seaman's injury. See Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Authority, supra.
We believe that the rule which allows the shipowner to be relieved of his contractual duty of paying maintenance and cure when a tortfeasor has caused the injury was never intended, nor can it be construed, to visit hardship upon the seaman. The seaman has two independent causes of action, one against the tortfeasor and one against the shipowner. If he should decide not to pursue a claim against the tortfeasor, he can, unquestionably, continue receiving maintenance and cure benefits from the shipowner, thus relegating the shipowner to an action against the tortfeasor, seeking reimbursement of those benefits paid. It is not the law that if the employee should undertake to make a damage claim against the tortfeasor, the shipowner escapes from its obligation of maintenance and cure as soon as judgment is rendered against the tortfeasor (without regard to the possibility that such a judgment may be reversed on appeal, or be uncollectable).
*700 The appellant also contends that its decision to terminate maintenance benefits was justified because Hebert had been found to be the "borrowed employee" of Diamond M. That a seaman is a borrowed employee of one employer does not mean that he thereby ceases to be his immediate or prime employer's employee. Spinks v. Chevron Oil Company, 507 F.2d 216 (C.A. 5 Cir. 1975). Again, for the reasons stated above, a seaman is not put in the position of having to wait for a determination of who is the borrowing employer ultimately obligated to pay maintenance benefits before he is entitled to receive such benefits. His prime contractor, in this case Dowell (and its insurer), must make prompt contemporaneous payment of such benefits to the seaman; it cannot delay for a judicial determination of the borrowing employer's liability.
This decision in no way suggests "double recovery;" it is clear that a seaman can not recover twice for the same elements of damage. See Vickers v. Tumey, 290 F.2d 426 (C.A. 5 Cir. 1961); Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Authority, supra.
We thus find that the trial court correctly adjudged Aetna to pay maintenance and cure benefits from January 29, 1979, until the judgment in favor of plaintiff in Hebert v. Diamond M Company becomes executory and is satisfied.
The next issue presented for our decision in this case is whether the trial court should have awarded medical expenses of $10,602.16, maintenance and cure of $25,000.00, and attorney's fees of $7,500.00 for bringing this action. The Court held in Cortes v. Baltimore Insular Line, supra, that "[i]f the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him; the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt."
On this question, the trial judge stated in his written reasons:
"The court granted both applications for a new trial and said new trial was held on May 1, 1980, was taken under advisement pending submission of briefs, and is now ready for decision.
"The court has very carefully examined the record, and in particular the exhibits filed in the record in support of the medical claim by plaintiff, and has concluded that the figure of $10,602.16 in the judgment rendered on August 30, 1979 is correct. The court itemizes from the record those figures which the record supports and the source of those medical expenses as follows:

"OR Surgical & Medical Equipment $ 505.39
Terrebonne General Hospital 1,056.20
Physical Therapy & Rehabilitation
 Center 493.00
Broadmoor Drug Store 572.57
Thomas A. Moore, M.D. 7,975.00
 __________
TOTAL $10,602.16

"The record does not support any other finding of medical expenses except those itemized above. Therefore, the court is satisfied that the judgment awarding Mr. Hebert a judgment for $10,602.16 against Aetna Casualty & Surety Company is fully and accurately supported by the record. The court reaffirms and will render a judgment against Aetna Casualty & Surety Company awarding that sum of money to Mr. Hebert as having been proven to be due and owing him by a preponderance of the evidence and to the satisfaction of the court.
"After reconsidering its original position concerning damages, penalties and attorney fees, the court is now satisfied that it was in error when it refused to award damages, penalties and attorney fees to the plaintiff because of Aetna Casualty & Surety Company's refusal to pay the maintenance and cure benefits as required by law. The sum of money involved may be inconsequential to an insurance company customarily dealing in cases of this kind, but to an average working man faced with bills as large as is involved in this controversy, they are a serious obligation of great magnitude. Furthermore, because of the mental condition of Mr. Hebert, the continued demand of his creditors for payment of *701 these bills is obviously a source of aggravation, mental worry and anguish, and has contributed to his mental illness to some degree. Dr. Thomas Moore, the psychiatrist testifying in this case, contends that the failure to pay and discharge these medical obligations and continued dunning of Mr. Hebert by his creditors has significantly contributed to the deterioration of his mental health and has aggravated the already existing mental problems suffered by Mr. Hebert. (See transcript of testimony at pages 40, 41, 42, 43, 64, 68, 69 and 70.) The court does not believe there is any justifiable or valid legal reason why Aetna has not paid these bills. Under the law, as insurer of his employer, Aetna had an obligation to pay these bills and its failure to do so can only be characterized as unreasonable, arbitrary, willful, wanton and capricious. For these reasons the court is of the opinion that damages, penalties and attorney fees are not only warranted and justified but are also legally required in this instance. The court understands the law in cases of this kind to be, `If defendant's refusal to pay maintenance and cure stems from a wanton and intentional disregard of the legal rights of a seaman, the latter would be entitled to exemplary damages.' There has been in this instance such a disregard of the legal rights of Mr. Hebert entitling him to damages, penalties and attorney fees.
"The court feels that damages and penalties in this instance should be fixed at the sum of $25,000.00, and that the attorney fees incurred by Mr. Hebert in having to file a lawsuit to force Aetna Casualty & Surety Company to pay the medical bills due and to pay maintenance and cure benefits should be fixed at the sum of $7,500.00."
Vaughan v. Atkinson, supra, established that the shipowner-employer has an affirmative duty to investigate the claim for maintenance benefits with reasonable diligence and to pay such benefits when due. The Vaughan case further held that where this duty is neglected so as to amount to recalcitrance and indifference to the plight of the seaman-employee, the courts will allow his attorney's fees in a successful suit for recovery of the amounts so owed. See also Roberts v. S. S. Argentina, 359 F.2d 430 (C.A. 2 Cir. 1966); Smith v. Dale Hart, Inc., 313 F.Supp. 1164 (W.D.La.1970); Hudspeth v. Atlantic & Gulf Stevedores, Inc., 266 F.Supp. 937 (E.D.La.1967).
Since we find Aetna's failure to pay maintenance benefits "arbitrary and unreasonable," we affirm the trial court's award of damages in the amount of $25,000.00 for refusal to pay maintenance. We also find that the record supports the trial court's fixing of the medical expenses in the total amount of $10,602.16. In addition, we agree with the trial court's award of attorney's fees in the amount of $7,500.00, because we find Aetna recalcitrant and indifferent to its obligation to pay this seaman maintenance and cure, and decline to increase the award for services rendered on appeal. We note that additional attorney's fees for services rendered on appeal are not warranted where the plaintiff has sought an increase in the lower court's award. The plaintiff is not only protecting his rights on appeal, but he has sought additional relief which was denied at the trial level and is denied on appeal. Riche v. Krestview Mobile Homes, Inc., 375 So.2d 133 (La.App. 3 Cir. 1979).
Finally, appellant contends that it was an abuse of the trial court's discretion in awarding pre-judgment interest to the plaintiff, and urges that pre-judgment interest, as a general rule, is not awarded in cases such as the one at bar. While the courts have consistently held that pre-judgment interest is not to be awarded in claims made under the Jones Act (Barrios v. Louisiana Construction Materials Company, 465 F.2d 1157, C.A. 5 Cir. 1972), in cases brought under the general maritime law, the trial court has discretion to award such interest. See Canova v. Travelers Insurance Company, 406 F.2d 410 (C.A. 5 Cir. 1969), writ denied, 396 U.S. 832, 90 S.Ct. 88, *702 24 L.Ed.2d 84 (1969); Hebert v. Diamond M Company, supra; Benoit v. Fireman's Fund Insurance Company, 361 So.2d 1332 (La. App. 3 Cir. 1978). The record reflects no abuse of this discretion.
Accordingly, for the reasons assigned, we affirm the judgment appealed at appellant's costs.
AFFIRMED.