KNOLL, Judge.
This appeal concerns the question of whether Terry D. Rutherford and his wife, Sharon Skinner Rutherford, filed suit in the proper venub against Chiles Drilling Company, Chiles Offshore, Inc., Chiles Offshore Limited V, and Chiles-Alexander Offshore, Inc. (hereafter collectively referred to as Chiles)[1]. The Rutherfords sued Chiles in Sabine Parish, the Rutherfords’ domicile, seeking damages for personal injury under the Jones Act and general maritime law, as well as damages for Chiles’ arbitrary and capricious failure to properly pay maintenance to Terry Rutherford. Prior to answer, Chiles filed a declinatory exception of improper venue, contending that neither the Chiles’ corporations nor the partnership were domiciled in Sabine Parish, that the corporations’ principal place of business and the partnership’s agent for the service, of process was in Lafayette Parish, and that the accident did not occur in Sabine Parish. The trial court denied the declina-tory exception and rejected Chiles’ motion for rehearing or alternatively its motion for a new trial on the exception.
Chiles now appeals the denial of its decli-natory exception of improper venue. We reverse, and remand this matter to the trial court for further action consistent with the views expressed herein.
FACTS
From the Rutherfords’ petition for damages, we learn that Chiles employed Terry Rutherford as a roustabout on the drilling vessel YUCATAN which was operating in federal waters more than three miles off the coast of Louisiana. On October 2, 1986, Rutherford was injured while performing maintenance work on the YUCATAN.
At the hearing on Chiles’ exception, Charmaine Venable, Chiles’ claims manager in Lafayette, Louisiana, testified that Chiles paid all of Rutherford’s medical expenses, and further paid him $793.80 every two weeks, an amount equal to his net wages, from the time of his injury until February 4, 1988. Chiles determined that Rutherford had reached maximum medical cure as of February 4, 1988 and anticipated his return to work for them in a limited capacity. Rutherford did not return to work for Chiles, and this legal action was commenced on February 19, 1988. On March 16, 1988, Chiles began paying Rutherford maintenance payments of $25 per day retroactive to February 4, 1988.
IMPROPER VENUE
Chiles contends that they were foreign corporations and a foreign partnership doing business in Louisiana, and that Lafayette Parish was where their registered office and principal place of business were located. They argue that under these facts, Lafayette Parish, not Sabine Parish, was the proper venue in which the Ruther-fords should have initiated state court litigation against them.
LSA-C.C.P. Art. 42 provides, in pertinent part:
*265 “The general rules of venue are that an action against:
* * * * * *
(4) A foreign corporation licensed to do business in this state shall be brought in the parish where its principal business establishment in the state is located, as designated in its application to do business in the state;
* * * * * *
(6) A nonresident, other than a foreign corporation or a foreign or alien insurer, who has appointed an agent for the service of process in the manner provided by law, shall be brought in the parish of the designated post office address of an agent for the service of process; .... ”
The Rutherfords contend that Chiles failed to prove that the corporations had their principal business establishment in Lafayette Parish or that the partnership had appointed an agent for service of process in Lafayette Parish. We disagree. The Rutherfords alleged in their petition for damages that the corporations were foreign corporations and that their registered agent lived in Lafayette Parish. Likewise, in the Rutherfords’ petition for damages they again designate that the Chiles partnership is a foreign partnership and that its registered agent for service of process lived in Lafayette Parish. Furthermore, at the hearing on Chiles’ declinatory exception, Venable testified that the corporations’ principal place of business was Lafayette Parish, and at the hearing on the motion for new trial, the trial court allowed Chiles to introduce into evidence the various corporate certificates and licenses to do business within the State of Louisiana. With the facts admitted in the Rutherfords’ petition, the trial testimony and documentation presented to the trial court, we find that no other evidence was needed on this issue.
We next address the question of whether the Rutherfords were permitted to file suit in Sabine Parish because of an exception to the general venue rule established in LSA-C.C.P. Art. 42.
LSA-C.C.P. Art. 43 provides that the general rules of venue provided in Article 42 are subject to the exceptions provided in Articles 71 through 85, and otherwise provided by law. Exceptions to the general rules of venue are strictly construed because they are in derogation of a common right, and the party claiming such an exception must clearly bring itself within the terms of the exception. Travis v. Waste Management of Mississippi, Inc., 509 So.2d 192 (La.App. 1st Cir.1987).
The first exception urged by the Ruther-fords is that they were permitted to sue the Chiles’ corporation and partnership in Sabine Parish by virtue of the provisions of the Louisiana Long Arm Statute, LSA-R.S. 13:3201 et seq. In particular, they contend that LSA-R.S. 13:3203 provides that any cause of action described in the long arm statute permits suit to be instituted in the parish where the plaintiff is domiciled. We find the long arm statute inapplicable.
A non-resident is defined, in pertinent part, in LSA-R.S. 13:3206 as, “a partnership, ... not then domiciled in this state, or a corporation which is not organized under the laws of, and is not then licensed to do business in, this state.” (Emphasis added.) Neither the Chiles’ corporations nor the Chiles partnership fall within the ambit of this definition. Therefore, we find that the Rutherfords may not depend on the long arm statute as the basis for their exception to the general venue provisions.
The Rutherfords next contended that they were entitled to sue Chiles in Sabine by virtue of LSA-C.C.P. Art. 74 which provides:
“An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained_”
LSA-C.C.P. Art. 74 does not apply to actions ex contractu. Clement v. Redi-Bilt Corp., 249 So.2d 607 (La.App. 4th Cir.1971).
The Rutherfords urge a twofold exception which would bring them into the purview of LSA-C.C.P. Art. 74. They argue that Chiles’ discontinuation of compensa *266 tion in February 1986 was a tortious act because Chiles capriciously failed to provide maintenance, and that the payment of maintenance of only $25 a day six weeks later was itself a tort which occurred in Sabine Parish. Next, the Rutherfords argue that Sharon Rutherford’s consortium claim rests on facts which occurred in Sabine Parish. We will address these exceptions in the order outlined hereinabove.
Despite the Rutherfords’ contention otherwise, Hebert v. Aetna Cas. and Sur. Co., 400 So.2d 695 (La.App. 1st Cir.1981), holds that a seaman’s maintenance is a contractual right. In Hebert, at page 699 our brethren of the First Circuit stated:
“Maintenance and cure benefits are predicated on a seaman’s maritime employment contract, being consistently recognized as an implied provision in contracts with marine employment. Thus, the payment of maintenance and cure is a contractual obligation which the employer must perform, even though it is a special damage the seaman suffered from a tor-tious act. The cause of the responsibility is the contract; the tort is the remote occasion.
It was said by the Supreme Court in Pacific S.S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928):
‘[T]he right to maintenance, cure and wages, implied in law as a contractual obligation arising out of the nature of the employment, is independent of the right to indemnity or compensatory damages for an injury caused by negligence; and these two rights are consistent and cumulative.’ ” (Citations omitted.)
No matter how we look at the Rutherfords’ argument, we find that Chiles’ discontinuation of voluntary compensation payments came at a time when Chiles believed that Terry Rutherford had reached “maximum cure” and that he was returning to lighter duty work for Chiles. Up until that time, there is nothing to show that Terry Rutherford had demanded the payment of maintenance. Thus, we find that the Ruther-fords’ amending petition in mid-March of 1988 constituted the first claim for the enforcement of Terry Rutherford's contractual rights to maintenance. Therefore, we cannot say that Chiles’ failure to pay maintenance between February 4, 1988, and March 14, 1988, constituted a tort.
We likewise find no merit in Terry Rutherford’s claim for mental anguish from Chiles’ failure to pay maintenance, and his characterization of that as a tort which occurred in Sabine Parish, sufficient to maintain venue in Sabine Parish. Coursey v. White, 184 So.2d 625 (La.App. 4th Cir.1966), is dispositive of this issue. In Coursey, at page 627 the court stated:
“Mental anguish is ‘sustained’ whereever the person suffering therefrom happens to be when it occurs. If by chance the plaintiffs had been in Allen Parish, La-fourche Parish, or West Carrol Parish, for example, when they learned of the illegal seizure, the damage for mental anguish would have been ‘sustained’ in those locations and not in Orleans Parish [the parish where the seizure occurred]. In our opinion, it is quite obvious that Article 74 of the Code of Civil Procedure was never intended by the redactors thereof or by the legislature to permit a plaintiff to litigate in any parish of the state so capriciously or that in order to do so he should be permitted to divide the main damage from an element thereof in order to choose his venue.
* * * * * *
We are compelled to reach the inevitable" conclusion that in a case where the damage incurred by the plaintiffs is so subjectively nebulous that it could be litigated in any parish of their choice, the proper venue therefor is the parish of the defendant’s domicile....”
We now turn to Mrs. Rutherford’s claim for loss of society and consortium. With little hesitation, we find that Mrs. Rutherford’s claims are just as nebulous as the mental anguish claim discussed herein-above, and fit well into the analysis therein provided. Therefore, just as we found that LSA-C.C.P. Art. 74 was not intended to encompass a fragmented claim for mental anguish, we likewise find that LSA-C.C.P. Art. 74 does not include special treatment *267 for the claims for loss of society and consortium.
After thoroughly analyzing the various exceptions available to the Rutherfords through the allegations of their petition, we find that the trial court erred when it failed to maintain Chiles’ declinatory exception of improper venue.
Lastly, the Rutherfords urge in brief that we should affirm the trial court’s disposition of this action because Sabine Parish is the most convenient forum under LSA-C.C.P. Art. 123 to hear the case. A requisite for the transference of a civil case to a more convenient forum is that the forum to which the case is being transferred is one where the action might have been brought originally. LSA-C.C.P. Art. 123(A). From our analysis hereinabove, it is evident that Sabine Parish did not qualify as a forum where the action might have been properly brought. Therefore, we have no basis to order such a transfer to Sabine Parish.
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and this case is remanded to the district court for disposition in accordance with LSA-C.C.P. Art. 121. Costs of this appeal are assessed to the Rutherfords.
REVERSED AND REMANDED.

. The Rutherfords joined the various corporations and the Chiles’ partnership, Chiles Offshore Limited V, as defendants and indiscriminately refer to them collectively in their petition for damages as Terry Rutherford's employer. In this opinion, we will treat venue as to both the corporations and the partnership, even though they all may not have been Terry Rutherford’s employer.