**Renato LOBERIZA, Plaintiff,**

v.

**CALLUNA MARITIME CORP. and European Navigation, Inc., Defendants.**

**No. 91 Civ. 2613 (RPP).**

United States District Court, S.D. New York.

Jan. 14, 1992.

Kriendler & Kriendler, New York City by Paul S. Edelman, for plaintiff.

Poles, Tublin, Patestides & Stratakis, New York City by John G. Poles and Edward M. Cuddy, III, for defendants.

---

1. The distinction between vessels which operate in the tramp trade and vessels which operate in

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for damages alleging violations of the Jones Act, 46 U.S.C.App. § 688, the general maritime law of the United States, and 46 U.S.C. § 10313 *et seq.* Defendants move jointly for an order: pursuant to Fed.R.Civ.P. 12(b)(1) dismissing the Complaint for lack of subject matter jurisdiction; pursuant to Fed.R.Civ.P. 12(b)(5) and 12(b)(2) quashing service and dismissing the Complaint for lack of personal jurisdiction; pursuant to Fed.R.Civ.P. 12(b)(6) dismissing the Complaint for failure to state a claim; and dismissing the Complaint on grounds of *forum non conveniens.* For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

Plaintiff Renato Loberiza is a Philippine citizen. Defendant Calluna Maritime Corporation ("Calluna") is a Liberian corporation whose principal place of business in Liberia, and Defendant European Navigation, Inc. ("European") is a Liberian corporation with a place of business in Greece. At all relevant times, Calluna was the owner of the M/V Amazon Venture (the "Amazon"), European was the vessel's manager and operator, and the vessel was operating pursuant to time charters in the "tramp trade." [1]

Loberiza was employed by European as a seaman on the Amazon pursuant to an employment contract executed in the Philippines. The contract contains a Philippines forum selection clause which covers claims arising from personal injuries. Loberiza alleges that he was injured during a voyage from Bermuda to New York and now seeks damages from Calluna and European:

(1) for injuries sustained by reason of the Defendants' alleged negligence

liner service is discussed more fully below.

pursuant to the Jones Act, 46 U.S.C.App. § 688;

(2) for injuries sustained by reason of the unseaworthiness of the Amazon, the Defendants' failure to provide proper medical care and attention, and the Defendants' failure to repatriate him in a manner which would not aggravate his injuries, pursuant to the general maritime law of the United States; and

(3) for wages not paid pursuant to 46 U.S.C. § 10313.

## DISCUSSION

### I. SUBJECT MATTER JURISDICTION OVER § 10313 CLAIM

In certain circumstances, 46 U.S.C. § 10313 permits a seaman to sue in the United States courts for the recovery of unpaid wages. Section 10313 also provides for the imposition of penalties on shipowners for non-payment or late payment of wages after a seaman's discharge. In enacting the penalty wage provisions, Congress sought to prevent seaman from being left destitute at a foreign port far from home. *Cuevas v. Reading & Bates Corp.*, 770 F.2d 1371, 80 (5th Cir.1985). Accordingly, § 10313(i) provides, "This section applies to a seaman on a foreign vessel when in a harbor of the United States. The courts are available to the seaman for the enforcement of this action."

Here, Loberiza was not left destitute in New York, but rather he returned to the Philippines. Affidavit of Paul Edelman, sworn to on October 28, 1991 ("Edelman Aff.") at 2. Furthermore, the plain language meaning of § 10313(i) seems to require that the foreign vessel be in a United States harbor for the section to apply. Because there has been no showing that the Amazon or the Plaintiff was in New York at the time this action was filed, this Court lacks subject matter jurisdiction over Loberiza's § 10313 claim.

### II. PERSONAL JURISDICTION OVER CALLUNA AND EUROPEAN

At this stage of the proceedings, plaintiff need only make out a *prima facie* case for jurisdiction based on its own pleadings and affidavits. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Such pleadings and affidavits are to be construed in the light most favorable to the plaintiff, and all doubts must be resolved in the plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

In admiralty cases, the law of the forum state governs the issue of personal jurisdiction. *Klinghoffer v. S.N.C. Achille Lauro El Altri–Gestione*, 937 F.2d 44, 50 (2d Cir.1991). In cases brought under the Jones Act, personal jurisdiction is proper only if the defendant has both national contacts and is subject to the long-arm jurisdiction of the state in which the district court sits. *Gazis v. John S. Latsis Inc.*, 729 F.Supp. 979, 991 (S.D.N.Y.1990). Accordingly, jurisdiction is to be determined with reference to New York law. The only possible bases of jurisdiction are New York Civil Practice Law & Rules ("CPLR") §§ 301 and 302.

### A. CPLR § 301: Doing Business

CPLR § 301 provides for personal jurisdiction over a foreign corporation which is "doing business" in New York. A corporation is "doing business" in New York when it is engaged in "such a continuous and systematic course of activity that it can be deemed to be present in the state." *Klinghoffer*, 937 F.2d at 50–51, *citing Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 693–94, (1982). A corporation's activity rises to the level of "doing business" when it does business "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917). In determining whether this test has been satisfied, New York courts have focused on factors such as: the existence of an office in the state, the solicitation of business in the state, the presence of bank accounts and property in the state, and the presence of employees of the foreign defendant in the state. *Hoffritz for Cutlery*, 763 F.2d

at 58, *citing Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 853–54 (1967), *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266; *Bryant v. Finnish Nat. Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 627–28, 208 N.E.2d 439, 440–41 (1965).

For example, in *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990), the court found that the defendant was not doing business in New York when it neither solicited business, had offices, held bank accounts or property, or employed individuals in New York. Similarly, in *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F.Supp. 434 (S.D.N.Y.1976), the court found that a foreign shipowner who had no offices or employees in New York and who did not solicit business or conduct any regular service to or from New York was not doing business in New York. Jurisdiction pursuant to § 301 was also declined in *Mullins v. Hak*, 674 F.Supp. 997 (E.D.N.Y.1987). There, the defendant trucking firm had no offices, warehouses, personnel, or bank accounts in New York. However, it did deliver and pick-up cargo in New York if requested by customers, therefore logging an average of over 1,000 miles in the state each week. Nevertheless, the court ruled that the defendant's presence was only occasional and not sufficiently permanent to constitute doing business.

■ Here, neither Calluna nor European has sufficient contacts with New York to constitute doing business. Calluna is a Liberian corporation with offices in Liberia, and its sole asset is the Amazon. Calluna has no offices, employees, agents, property or bank accounts in New York, nor does it maintain a mailing address or telephone listing in New York. Affidavit of Maria Ladas, sworn to on September 3, 1991 ("Ladas Aff.") ¶ 1. European is a Liberian corporation with offices in Greece. It has never been licensed to do business in New York. European has no officers, employees, agents, bank accounts, or property in New York. It does not maintain any mailing address or telephone listings in New York. Affidavit of Georgios Bardis, sworn to on September 3, 1991 ("Bardis Aff.") ¶ 14.

It is undisputed that while the Amazon has made trips to New York, those trips were made at the discretion of its charterers, not according to any regular schedule, because the vessel is regularly chartered for operation in the tramp trade. Accordingly, the Amazon's contacts with New York lack the permanence and continuity which would lead to the conclusion that the vessel's owner or operator is doing business in New York.

**B.  CPLR § 302:  Long–Arm Jurisdiction**

CPLR § 302(a)(1) provides for jurisdiction over any non-domiciliary who, in person or via an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state," so long as the cause of action arises out of that transaction of business or supply of goods or services. Plaintiff argues that because the Amazon made numerous visits to ports in New York to deliver oil, both Calluna and European either contracted to supply goods or transacted business in New York. Plaintiff also argues that the use of a New York shipping broker, Elka Maritime ("Elka"), constitutes transacting business in New York via an agent.

**1.  Contracting to Supply Goods in New York**

■ The pleadings and affidavits do not show that either Calluna or European contracted to supply oil to New York. At all relevant times, the Amazon was operating in the "tramp trade" as opposed to in "liner service." It is undisputed that: (1) in liner service, a vessel's owner operates the vessel on a regular schedule sailing to and from specific ports, and the owner solicits and books cargo in the scheduled ports for its own account, thus deriving income directly from those cargos; (2) that a vessel operating in the tramp trade is available to any charterer who is willing to pay a competitive rate for the use of the vessel's cargo carrying capacity; (3) that a tramping vessel's itinerary is not determined by the owners or managers, but rather by the

# 1032

charterer of the moment; and (4) that it is the charterer's obligation to pay for the use of the vessel whether or not it has carried cargo, and therefore profit or loss on the cargo is entirely the risk of the charterer.

Because deliveries of oil to New York were made while the Amazon was operating in the tramp trade, neither Calluna or European contracted to supply oil in New York.

2. Transacting Business in Person

 The showing necessary for a finding that a defendant "transacted business" is considerably less than that necessary to establish that a defendant was "doing business" in New York. *Hoffritz for Cutlery,* 763 F.2d at 58. *See also Simonson v. International Bank,* 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). When determining whether a non-resident defendant has transacted business in New York, a court should look at the totality of the defendant's activities within the forum and determine if the defendant has engaged in purposeful activity in New York, thus invoking the benefit and protections of state law. *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 19, 209 N.E.2d 68, 75–76 (1965). *See also Galgay v. Bulletin Co.,* 504 F.2d 1062, 1064 (2d Cir.1974).

The activities of Calluna and European do not indicate that either corporation transacted business in New York. While the Amazon did make periodic visits to New York, those visits were made while the vessel was operating in the tramp trade, not in liner service offered by the owner or operator. As such, Calluna and European merely allowed the charterer of the Amazon to direct that the vessel go to New York to discharge of cargo. It was not necessary for the Amazon to actually visit New York for the Defendants to earn their income; such visits occurred merely at the discretion of the charterer of the moment.

3. Transacting Business Via an Agent

Loberiza argues that because the Amazon was at times chartered through Elka, a New York based chartering agent, this court has personal jurisdiction over European and Calluna on the theory that they transacted business in New York via an agent. Elka was not involved, however, in the chartering of the Amazon for the voyage on which Loberiza was injured. Edelman Aff. at 4–5. Thus, the requirement that there be an "articulable nexus between the business transacted and the cause of action sued upon" is not met. *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 322–23 (1981). *See also Beacon Enterprises v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983).

## CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction is granted.

IT IS SO ORDERED.