718 So.2d 572 (1998)
Noor Begum Karim, Wife of/and Fazal KARIM
v.
FINCH SHIPPING COMPANY, LTD., et al.
No. 97-CA-2518.
Court of Appeal of Louisiana, Fourth Circuit.
August 26, 1998.
*574 Paul C. Miniclier, New Orleans, for Plaintiffs-Appellants.
James A. Cobb, Jr., John F. Emmett, New Orleans, for Defendant-Appellee.
Before BARRY, WALTZER and LANDRIEU, JJ.
BARRY, Judge.
Plaintiffs appeal a judgment that granted an exception of lack of personal jurisdiction in favor of Finch Shipping Company. We convert the appeal to an application for supervisory writs, grant certiorari and affirm.

Facts
On August 17, 1995 Fazal Karim, a Bangladeshi seaman, was injured aboard the M/V LOUSSIO in the North Atlantic Ocean. The M/V LOUSSIO was a Panamanian flag vessel owned by Finch Shipping Company, Ltd., a Maltese corporation. It had left its European port of origin in ballast on August 4, 1995 bound for the U.S. Gulf Coast. (Karim said it was bound for New Orleans.) The charter party agreement was executed on August 10, 1995, six days after the vessel set sail, and stated:
Vessel currently ballasting at full speed and directly to U.S. Gulf where e.i.r. basis Mississippi River is 24th/25th August, 1995, all going well, weather permitting.... (T)he said vessel ... shall with all speed, sail and proceed to ONE TO THREE SAFE BERTHS/SAFE ANCHORAGE MISSISSIPPI RIVER NOT ABOVE BUT INCLUDING BATON ROUGE....
Several days after the accident, on August 26, 1995, Karim was evacuated by helicopter to New Orleans where he received extensive medical treatment.
Karim and his wife filed this suit in Orleans Parish under the "Savings to Suitors Clause," 28 U.S.C. § 1333. Among the defendants were Finch Shipping and its insurer Ocean Marine Mutual Protection & Indemnity Association, Ltd. The Karims alleged negligence and unseaworthiness and claimed maintenance and cure. The first amended petition alleged that Finch Shipping through its agent, defendant Barwil Agencies, N.A. Inc., delayed Karim's medical evacuation from the ship, and it sought penalties based on Finch Shipping's failure to pay maintenance and cure.
Finch Shipping filed exceptions of lack of personal jurisdiction, improper venue and improper *575 service of process. The trial court held there were insufficient contacts to support personal jurisdiction.
The Karims argue there was general jurisdiction because Finch Shipping engaged in continuous and systematic business activities in Louisiana; there was specific jurisdiction because the accident and other alleged damage arose out of Finch Shipping's contacts with Louisiana; and the assertion of jurisdiction is consistent with traditional notions of fair play and substantial justice.

Appealability of Judgment
La. C.C.P. art.1915 was amended by Acts 1997, No. 483, § 2 to provide that when a court renders a partial judgment as to one or more but less than all of the parties,
the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
La. C.C.P. art. 1915(B)(1).
Act 483 was effective July 1, 1997. The hearing on Finch Shipping's exception was June 13, 1997. The trial court took the matter under advisement and signed the judgment on July 9, 1997, after the effective date of Act 483. The judgment is silent as to whether the parties agreed or the court designated it final. Therefore, the judgment is not in accord with Act 483 and is not final or appealable. However, we will consider the appeal as a timely application for supervisory review, grant certiorari, and consider the merits. City of New Orleans v. Ballansaw, 475 So.2d 768 (La.1985).[1]

Overview of Jurisdictional Requirements
A court may exercise personal jurisdiction over a nonresident who acts directly or by agent as to a cause of action arising from acts or omissions enumerated in La. R.S. 13:3201(A).[2] In addition, a Louisiana court may exercise personal jurisdiction over a nonresident
on any basis consistent with the constitution of this state and of the Constitution of the United States.
La. R.S. 13:3201(B).
Subsection (B) ensures that the long-arm process extends to the limits allowed by due process. La. R.S. 13:3201, Comment  1987.
Due process requires that to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum state such that the maintenance of suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945); de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d 103, 105 (La. 1991).
When a controversy arises out of or is related to the defendant's contacts with the forum, the state exercises "specific" personal jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). *576 When a forum seeks to exercise specific jurisdiction over a nonresident defendant, the meaningful contacts requirement is satisfied if the defendant purposefully directed its activities at the residents of the forum and the plaintiff's injury arose out of or was related to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d at 106.
When a state exercises personal jurisdiction over a defendant in a suit that does not arise out of and is unrelated to the defendant's contacts with the forum, the state exercises "general" jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 413-15 n. 9, 104 S.Ct. at 1872 n. 9. General jurisdiction may be supported by a party's "continuous and systematic" contacts with the forum even though damage does not arise from those contacts. Helicopteros Nacionales de Colombia, S.A., at 416-17, 104 S.Ct. at 1873. Contacts of a more extensive quality and nature are required for general jurisdiction. Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786 (5th Cir. 1990). See Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).
The party asserting jurisdiction has the burden to show minimum contacts. Once that burden is met for either general or specific jurisdiction, a presumption of reasonableness of jurisdiction arises and the burden shifts to the opposing party to prove that the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to outweigh the minimum contacts. de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d at 107. Factors to determine the reasonableness of jurisdiction include the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 113-15, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d at 107.

General Jurisdiction
The Karims argue there is general personal jurisdiction based on the M/V LOUSSIO's three voyages to New Orleans for which Finch Shipping grossed a substantial sum; Finch Shipping's contacts with local shipping agents and suppliers relative to those voyages; and the negotiation (by management company Alpina Shipping) of Karim's voyage to load cargo in New Orleans.[3]
Perkins v. Benguet Consolidated Mining Co., supra, held that a foreign corporation's contacts with Ohio were sufficiently continuous and systematic to support general jurisdiction. During the Japanese occupation of the Philippine Islands, the president and general manager of the defendant Philippine company maintained an office in Ohio from which he conducted corporate activities. He kept files, held meetings, distributed salary checks drawn on Ohio banks, and conducted a continuous and systematic portion of company business. Perkins, 342 U.S. at 446-48, 72 S.Ct. at 419.
Asarco, Inc. v. Glenara, Ltd., 912 F.2d at 787, held there were insufficient contacts for Louisiana to exercise general jurisdiction over the management company which managed the sunken vessel's last trip. The company was not licensed to do business in Louisiana, did not solicit business, maintain an office, own property, or employ personnel in Louisiana. The company's contacts consisted of about twenty calls at Louisiana ports in four years by ships which it managed. The director of Finch Shipping, Mohammad Ilyas Shaikh, testified in deposition that Finch Shipping has no office, bank account or asset in the United States. Its officers have not been to the U.S. except for Shaikh's family trip to Disney World in 1987. Shaikh *577 lives in Pakistan and the United Arab Emirates and has no asset or bank account in the United States. The M/V LOUSSIO's crew was from Bangladesh and its officers were from Pakistan.
When Karim was injured, one of Finch Shipping's prior contacts with Louisiana consisted of an M/V LOUSSIO voyage to New Orleans in February 1995 to load cargo. Its fourth voyage under Finch Shipping ownership (the second to New Orleans) was in August 1995 and the one on which Karim was injured. The M/V LOUSSIO sailed to New Orleans a third time on October 29, 1995 for its sixth voyage. The ship was damaged and forced to remain in New Orleans almost two months to be repaired. It was sold for scrap in Bangladesh in March 1996.
Shaikh said Finch Shipping had no dedicated service to the United States and did not solicit business or advertise in the United States. He said the charters were negotiated and arranged in Denmark by Alpina Shipping, the management company that handled the daily operations of the M/V LOUSSIO. Alpina's offices are in Denmark.
According to Finch Shipping's Answers to Interrogatories (in evidence), Finch derived revenue from its charters to New Orleans. That revenue "was not strictly derived from operations in the United States, but involved operations in sailing from Europe without cargo to New Orleans to load cargo, and a return to Europe to discharge cargo."
Finch Shipping's contacts with Louisiana depended solely on the availability of cargo at any given time. Stops in New Orleans were sporadic and did not constitute the "continuous and systematic" contacts necessary to support general jurisdiction. See Perkins v. Benguet Consolidated Mining Co., supra; Asarco, Inc. v. Glenara, Ltd., supra.

Specific Jurisdiction
The Karims argue the accident arose from Finch Shipping's significant and purposeful contacts with Louisiana because Karim slipped while cleaning the ship in preparation to receive cargo in New Orleans. They do not claim the accident was caused by an act or omission in Louisiana.
The parties did not cite and we did not find a case in which a non-resident seaman was injured on the high seas and the court exercised personal jurisdiction over the shipowner based solely on the fact that the port of destination was in the forum state.
The Karims rely upon Kanematsu (USA), Inc. v. M/V HUA GUANG, 1996 A.M.C. 2845 (E.D.La.1996). Kanematsu was based on damaged cargo which was discharged in the port of New Orleans. The owner time chartered the vessel to Parakou, S.A., which subchartered the vessel to another. The court held there was specific personal jurisdiction over the time charterer (Parakou, S.A.) and a company which assumed the rights and liabilities of the owner under the time charter. Minimum contacts were present because the defendants were parties to a contract to deliver cargo to New Orleans (the charter parties gave them actual authority to issue bills of lading in the Master's name). The damage arose from and was related to that contact with the forum because the cargo was damaged. The court held the exercise of jurisdiction was fair because defendants profited from the transaction, Louisiana had an interest in ensuring that parties who agree to deliver cargo in the state do so, and resolution in Louisiana would be efficient.
Similarly, in Chilean Nitrate Corp. v. M/V HANS LEONHARDT, 810 F.Supp. 732 (E.D.La.1992), plaintiff's cause of action for contaminated cargo that was unloaded in New Orleans arose out of the defendant vessel owner's contact with Louisiana. The owner allowed its vessel to be chartered and/or operated specifically to transport that cargo to New Orleans and thus availed itself of the privilege of conducting business here. The court further held that the exercise of jurisdiction was fair based on the nature and extent of the contact, Louisiana's interest in providing redress against those whose acts or omissions in this state injure property, and suit in Louisiana was no less convenient to the parties than suit in alternative forums within the United States.
*578 A different result was reached in Francosteel Corp. v. M/V Charm, 19 F.3d 624 (11th Cir.1994), which dismissed plaintiff's claim against the vessel's owner and manager based on lack of in personam jurisdiction. The vessel owner chartered the vessel under an agreement that anticipated that the vessel would transport steel rods to Georgia. The bills of lading were signed by the "Master or Agent" of the vessel. The vessel sank in the Atlantic Ocean and the cargo was lost. Francosteel examined jurisdiction under Georgia's long-arm statute, which like Louisiana confers personal jurisdiction to the maximum extent allowed by due process. The court held that, assuming the bill of lading created a contract between the shipper and owner, that contract was insufficient for specific jurisdiction, considering that the ship sank at sea and the shipper negotiated with the charterer (rather than owner), which directed the ship to Georgia.
Alpina Shipping, the Danish management company, determined based on the freight market that the M/V LOUSSIO would go to the United States. Alpina negotiated the charter party that directed the vessel to the Mississippi River to load cargo and proceed to Amsterdam "as ordered on signing Bill of Lading or as directed by Charterers or their agents...." The charter party did not specify who had authority to sign a bill of lading.
According to Shaikh, the port of destination was determined by "Alpina or the charterer.... It depends on the cargo available at that time. Whatever fixture is made, the vessel goes to that port as per the charter party." Shaikh said the "customer" dictated the port of destination. He did not define "customer." Elsewhere in Shaikh's deposition the charterer was referred to as the customer. Shaikh said that "whatever is in the charter party the owner has to accept that...."
Although the record indicates that Finch Shipping's vessel manager Alpina negotiated the charter party directing the M/V LOUSSIO to the U.S. Gulf, Mississippi River (and thus Louisiana), Karim's injury occurred on the high seas outside of Louisiana territorial waters. The M/V LOUSSIO was traveling in ballast without the cargo which was to load in New Orleans. According to Karim, the previous cargo was coal that was loaded in South Africa and unloaded in Greece. Karim was a helmsman who sometimes helped clean cargo holds after they were unloaded. He said in his deposition that he slipped from a ladder which was slippery due to coal dust and water.
This is distinguishable from Kanematsu (USA), Inc. v. M/V HUA GUANG, supra, and Chilean Nitrate Corp. v. M/V HANS LEONHARDT, supra, in which the causes of action arose from damaged and contaminated cargo which, through the defendants' contacts with Louisiana, was to be unloaded in New Orleans.
Loberiza v. Calluna Maritime Corp., 781 F.Supp. 1028 (S.D.N.Y.1992), cited by defendants, is distinguishable and unnecessary to resolution of this issue. Loberiza involved personal injuries to a seaman on a voyage from Bermuda to New York. The vessel was in the "tramp trade" for which the charterer determined the vessel's schedule. Because deliveries of oil to New York were made during the tramp trade, the owner and manager did not contract to supply oil, which would have subjected them to jurisdiction under New York law. Also, the voyage on which plaintiff was injured was not chartered by the owner's New York agent. Unlike Loberiza, Alpina negotiated the charter party to load in the U.S. Gulf (Mississippi River) and was apparently involved in determining the destination or was aware of it.
Even if the charter party were a sufficient minimal contact with Louisiana, the exercise of personal jurisdiction would not be fair. Finch Shipping did not have offices, assets, or officers in the United States. It made three port calls to New Orleans but did not have a dedicated service and did not solicit business here. The vessel's crew and officers were not U.S. citizens.
Plaintiffs have an interest in obtaining effective resolution of their case. However, the accident did not occur here, there is no allegation that the accident was caused by an act or omission in this state, and witnesses (including plaintiffs) are not in the United States. Louisiana has no interest in the *579 case. The exercise of personal jurisdiction in state court does not comport with traditional notions of fair play and substantial justice. The trial court properly held there is no specific jurisdiction.

Additional Causes of Action
The Karims argue the trial court has specific jurisdiction over Finch Shipping for related causes of action arising from Finch's acts and omissions in Louisiana: failing to pay maintenance and cure and wages; failing to assist Karim's medical evacuation from the M/V LOUSSIO; and wrongfully attempting to deport Karim from New Orleans. The trial court held the Karims'"jurisdictional claims are bootstrap in nature." Each claim is examined below.

Maintenance and Cure
The Karims argue that Finch Shipping breached its obligation to provide maintenance and cure in Louisiana and therefore is subject to personal jurisdiction regardless of whether Karim's injury arose from Finch's other contacts with In Louisiana. We hold that Finch Shipping's alleged failure to pay maintenance and cure in Louisiana did not give rise to specific jurisdiction.
The Karims correctly note that maintenance and cure is an independent cause of action. It is distinct from other maritime remedies such as an unseaworthiness or Jones Act claim. Perry v. Allied Offshore Marine Corp., 618 So.2d 1033, 1035 n. 1 (La.App. 1st Cir.1993). See Hebert v. Aetna Casualty & Surety Co., 400 So.2d 695 (La. App. 1st Cir.1981). However, the Karims cite no authority that the failure to pay maintenance and cure and wages in the forum state constitutes sufficient contacts to subject a foreign defendant to personal jurisdiction in an action by a non-resident seaman injured on the high seas.
Hebert v. Aetna Casualty & Surety Co., supra, cited by the Karims, is not dispositive. In Hebert Aetna insured the employer of an injured seaman. In the initial action the seaman received a judgment against his employer, and Aetna as intervenor received a judgment against the employer for maintenance and cure payments that it made.
Thereafter, Aetna stopped paying maintenance and cure. The seaman filed a separate suit against Aetna for maintenance and cure and medical benefits and won. On appeal Aetna argued the seaman had no cause of action directly against Aetna under La. R.S. 22:655 because the insurance policy was not written in Louisiana and the accident did not occur here. (The court noted that the correct procedural objection was an exception of no right of action.) In that context, the court held the seaman had a right of action against Aetna under the direct action statute because the offending act, i.e., the failure to pay, occurred in Louisiana where the claim was administered and the home base of Aetna's representative who refused payment. Personal jurisdiction was not an issue in Hebert. The court did not conduct a due process analysis and consider whether Aetna's failure to pay in Louisiana constituted sufficient contacts for specific jurisdiction. We have no basis to extend Hebert to exercise personal jurisdiction over Finch Shipping for its alleged failure to pay maintenance and cure in Louisiana.
Grevas v. M/V Olympic Pegasus, 557 F.2d 65 (4th Cir.1977), cert. den. 434 U.S. 969, 98 S.Ct. 515, 54 L.Ed.2d 456 (1977), considered whether federal district court in Virginia had personal jurisdiction over a defendant shipowner in a seaman's action for personal injuries, failure to treat, maintenance and wages. The seaman was Greek, and the vessel was a Liberian flag vessel owned by a Panamanian corporation with no resident agent in Virginia. The plaintiff was injured en route to Virginia to load cargo. He was treated on board the vessel for three days, then transferred ashore and was treated in the United States Public Health Service Hospital in Virginia for nearly three months. The Court evaluated personal jurisdiction under the Code of Virginia, § 8-60, which "extended to the limits allowed by due process." Grevas, 557 F.2d at 68. The Court did not separately consider the plaintiff's claims for failure to treat and for maintenance. Rather, the court examined the defendant's contacts with Virginia and determined they were insufficient with respect to a non-resident's cause of action that arose outside of Virginia.
*580 Our analysis of the nature of the seaman's right and the shipowner's obligation to pay maintenance and cure further supports our conclusion.
The shipowner's duty to pay and the seaman's right to maintenance and cure is predicated on the maritime employment relationship. Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 730-32, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943). It is contractual "in the sense that it has its source in a relation which is contractual in origin." Vaughan v. Atkinson, 369 U.S. 527, 533-35, 82 S.Ct. 997, 1001, 8 L.Ed.2d 88 (1962). See Tate v. American Tugs, Inc., 634 F.2d 869, 870 (5th Cir.1981).
There is authority that an action for maintenance and cure is an action ex contractu, not an action for damages for personal injury. 78A C.J.S. Seamen § 134 at p. 634 (1995), citing Jones v. Waterman S.S. Corp., 155 F.2d 992 (3d Cir.1946). However, the Supreme Court held that when an employer's failure to pay maintenance and cure causes or aggravates an illness or injury, the seaman has a personal injury action against the employer under the Jones Act. Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932). See also Perry v. Allied Offshore Marine Corp., 618 So.2d 1033, 1035 (La.App. 1st Cir.1993), which recognized that an action for maintenance and cure is an action ex contractu, "however, failure to furnish proper maintenance and cure is an actionable personal injury entitling a disabled seaman to compensation for damages for injuries resulting therefrom." That suggests a claim for maintenance and cure may be a quasi-tort.
The Karims did not allege that Karim's employment contract had any relationship to Louisiana. They argue in brief that Finch Shipping's agent guaranteed payment of medical expenses by executing a standard Immigration and Naturalization form. Notably, the Karims do not allege that Finch guaranteed payment to Karim; rather, they argue that Finch's "contractual agreement to be responsible to Louisiana health care providers" implies an understanding that failure to pay might result in litigation in this forum. Two guarantees in evidence state that Karim arrived at New Orleans with injuries and that the signatory (as agent for "owner") "guarantee[s] to pay any and all expenses incurred or to be incurred for the hospitalization, care, and treatment ... of the said alien crewman." No other details were provided and the forms did not state to whom the guarantees were made.
We conclude that the Karims' claim for maintenance and cure did not arise from those guarantees.
Nieves v. Houston Industries, Inc., 771 F.Supp. 159 (M.D.La.1991), cited by plaintiffs, does not apply. Nieves (not an admiralty case) involved a claim by an insured against a foreign insurer that had accepted premium payments drawn on Louisiana banks and had paid other claims in Louisiana.
Likewise, the record does not support jurisdiction based on a tort-like claim for maintenance and cure. In their original petition the Karims alleged that Mr. Karim was not properly treated while on the M/V LOUSSIO and prayed for maintenance and cure. In their second amended petition they alleged that Karim suffered "traumatic injury to his right eye" and would continue to incur medical expenses. In the third amending petition the Karims alleged that the eye injury resulted in part from Finch Shipping's "failure to provide reasonable medical care which conformed to their medical community's standards, ... failure to provide reasonable translation services and failure to promptly diagnose "the injury. [Emphasis added.]
They did not allege that Finch Shipping's failure to pay maintenance and cure caused or aggravated Karim's injury and did not allege that the persons or entities that provided substandard care were agents of Finch Shipping. The Karims cite no authority that a shipowner's duty to pay maintenance and cure encompasses the health care provider's duty to provide a particular standard of care and to properly diagnose the injured seaman.

Failure to Medically Evacuate
The Karims argue that their injuries arose in part from the alleged delay of Finch *581 Shipping, through its local husbanding agent Barwil Agencies, in evacuating Karim from the ship for medical treatment. Even if that alleged act were sufficient to establish a prima facie case that jurisdiction is reasonable, the record indicates that the assertion of jurisdiction for that claim would not comport with traditional notions of fair play and substantial justice. See de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d at 107.
We reiterate that Finch Shipping had no office, officer, asset, or bank account in Louisiana. It did not solicit business or advertise here. The ship's crew and officers were not U.S. citizens. Louisiana has no interest in this dispute. Though witnesses for this claim presumably would include employees of Barwil Agencies, Finch Shipping's answers to interrogatories in related federal litigation (in evidence in this case) and Barwil telexes indicate that Barwil communicated with persons outside of Louisiana and outside of the United States who might be called as witnesses.
We conclude that the inconvenience and unfairness to Finch Shipping to litigate the alleged failure to evacuate in this forum outweighs the minimal contacts with Louisiana and defeats jurisdiction. See de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d at 107.

Attempted Deportation
The Karims argue that the court had jurisdiction over Finch Shipping based on its alleged tortious attempt to deport Karim. They cite no support for that claim.
Similar to the claim for delayed medical evacuation, we hold that even if Finch Shipping's alleged wrongful attempt to deport Karim was sufficient to show jurisdiction is presumptively reasonable, the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. Finch Shipping's contacts with Louisiana have been minimal. The Karims are not Louisiana residents. Though some witnesses for that claim would be in Louisiana, this state has no interest in the dispute. The unfairness of defending the action in Louisiana outweighs Finch's alleged contact.
We affirm the trial court's judgment. The remaining arguments are pretermitted.
AFFIRMED.
WALTZER, J., concurs with reasons.
WALTZER, Judge, concurring.
I respectfully concur in the affirmance of the judgment rendered by the trial court granting an exception of lack of jurisdiction over the defendant, Finch Shipping Company. I write separately because I do not believe the facts of this case support the majority's conversion of this appeal into an application for supervisory review via writ of certiorari.
My reading of Acts 1997, No. 483, sec. 2 convinces me that the Act was applicable to the judgment below. Therefore, absent agreement by the parties that the judgment was final and appealable, the trial court had discretion to designate it as such. The record shows neither agreement of the parties nor action by the trial court designating or refusing to designate the judgment to be final. A case appealed without the agreement of parties or judicial designation should be remanded to the trial court in order that the trial court might make or deny the designation. If the trial court were to refuse to designate the judgment as final, we would review the decision to determine whether the failure to designate under the facts of this case constituted abuse of the trial court's discretion.
Under the facts of this case, it is clear, indisputable and unequivocal that the judgment maintaining the jurisdictional exception should be considered a final appealable judgment. Indeed, the appellee does not dispute in its brief the propriety of the appeal procedure. If we were to remand the case to the trial court, the trial court's failure to designate it a final judgment would constitute abuse of the trial court's discretion. Therefore, since the judgment would be held to be appealable after remand, in the interest *582 of judicial economy, this Court should review the judgment by appeal.
NOTES
[1] We are mindful of La. C.C.P. art. 1915(B)(2):

In the absence of such a determination and designation [that the partial judgment is final], any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal.
This matter was taken under advisement before the effective date of Act 483 and judgment was rendered after the effective date. We have considered the merits in the interest of judicial economy.
[2] Some examples of contacts sufficient to support the exercise of personal jurisdiction as listed in R.S. 13:3201(A) are:

(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
[3] In respect of Finch Shipping's reference in Answers to Interrogatories to "the agreement with plaintiffs that all financial information will be kept strictly confidential," we refrain from publishing the exact amount, which is more than $1,000,000 and less than $4,000,000.